

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-21-00038-CR

DEMONDRE DESHAWN HOLINESS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 2027954

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

MEMORANDUM OPINION

A Hopkins County jury convicted Demondre Deshawn Holiness of evading arrest with a motor vehicle. *See* TEX. PENAL CODE ANN. § 38.04. The jury assessed a punishment of nineteen years' imprisonment after finding that the motor vehicle was a deadly weapon and that the State's punishment enhancement allegation was true. On appeal,[1] Holiness argues that the jury charge during the guilt/innocence phase omitted the required mens rea and commented on the weight of the evidence and that the jury was improperly charged on the issue of good conduct time during punishment. Because we find that Holiness was not egregiously harmed by any jury charge error, we affirm the trial court's judgment.

## I.    The Evidence at Trial

Thomas Colt Patterson, a deputy with the Hopkins County Sheriff's Office (HCSO), saw a vehicle driven by Holiness on the interstate, ran a license plate check to determine if it had been reported stolen, and attempted to pull Holiness over.[2] Holiness failed to yield to the lights and sirens of several police units and, instead, led them on a high-speed chase. Patterson testified that he could not catch up to Holiness even though he was traveling at 120 miles per hour. Holiness weaved in and out of interstate traffic, exited onto the interstate service road, evaded spike strips that were deployed by other officers, and exited onto an overpass.

Aaron Chaney, another HCSO deputy, testified that Holiness was passing semi-trucks from both the right and left shoulders of the road and that Holiness was within three or four feet

---

[1]In companion cause numbers 06-21-00037-CR and 06-21-00039-CR, Holiness appeals his convictions for unauthorized use of a motor vehicle and unlawful possession of a firearm by a felon.

[2]Patterson testified that he was attempting to lawfully detain or arrest Holiness.

2

of hitting his patrol unit. Chaney and Patterson both testified that Holiness was operating the vehicle in a manner that could cause serious bodily injury or death. A dash cam recording of the dangerous chase was played for the jury.

Bobby Buford witnessed Holiness driving the vehicle at excessive speeds and saw him almost "hit [a] little ol' woman and [a] baby" before stopping to exit the stolen vehicle. Buford called 9-1-1 to report the incident. Sean Hoffman, an officer with the Sulphur Springs Police Department, testified that a 9-1-1 caller reported that a "black male had exited a silver BMW on Kendall Lane." Hoffman proceeded to the location, spotted Holiness, and arrested him. His body camera footage, depicting his arrest of Holiness, was played for the jury, as were recordings of jailhouse telephone calls in which Holiness discussed the high-speed chase. After hearing the evidence, the jury convicted Holiness of evading arrest or detention and found that the motor vehicle was a deadly weapon.

During punishment, Holiness pled true to the State's punishment enhancement allegation that he was previously convicted of assault with a deadly weapon, and the State introduced a judgment of conviction showing that Holiness was sentenced to three years' imprisonment for that offense. In addition, the State introduced judgments of conviction for Holiness's other prior offenses, including (1) fraudulent use and possession of identification, (2) possession of less than two ounces of marihuana in a drug-free zone, (3) theft of items valued at greater than or equal to $750.00 but less than $2,500.00, (4) failure to identify, (5) criminal trespass, and (6) two counts of evading arrest or detention. The jury assessed a punishment of nineteen years' imprisonment.

## II.     Standard of Review

"We employ a two-step process in our review of alleged jury charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32).

"The level of harm necessary to require reversal due to jury charge error is dependent upon whether the appellant properly objected to the error." *Id.* at 555 (citing *Abdnor*, 871 S.W.2d at 732). Here, because the defendant did not object to the charge, we will not reverse the judgment "unless the record shows the error resulted in egregious harm, *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)), such that he did not receive a fair and impartial trial." *Id.* (citing *Almanza*, 686 S.W.2d at 171; *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.)). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)). "In making this determination, we review 'the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole.'" *Id.* (quoting *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing

4

*Almanza*, 686 S.W.2d at 171). "Direct evidence of harm is not required to establish egregious harm." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

## III. Holiness Was Not Egregiously Harmed by the Jury Charge on Guilt/Innocence

Holiness raises two complaints about the trial court's jury charge during guilt/innocence. First, he argues that the trial court omitted a required mens rea element for the offense. Second, he argues that the trial court's definitions in the abstract portion of the jury charge constituted comments on the weight of the evidence. Even assuming error, we find that Holiness was not egregiously harmed.

Holiness complains that both the abstract and application paragraph omitted a required mens rea element. "A person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him." TEX. PENAL CODE ANN. § 38.04(a). The offense is a third-degree felony if "the actor uses a vehicle . . . while the actor is in flight." TEX. PENAL CODE ANN. § 38.04(b)(2)(A). The abstract portion of the trial court's charge read:

> To prove that the defendant is guilty of evading arrest in a motor vehicle, the state must prove, beyond a reasonable doubt, six elements. The elements are that—
>
> 1.      the defendant intentionally fled from a peace officer;
>
> 2.      the peace officer was attempting to arrest or detain the defendant;
>
> 3.      the defendant knew the person from whom he fled was a peace officer;
>
> 4.      The defendant knew the person from whom he fled was attempting to arrest or detain the defendant;

5

> 5.    the attempted arrest or detention was lawful; and
>
> 6.    the defendant used a vehicle while in flight.

In the application paragraph, the trial court instructed the jury to determine whether the State proved beyond a reasonable doubt the following:

> 1.    [That Holiness,] in Hopkins County Texas on or about June 29, 2020, intentionally fled from Thomas Colt Patterson, a peace officer;
>
> 2.    the defendant fled while Thomas Colt Patterson was attempting to arrest or detain the defendant;
>
> 3.    the defendant knew Thomas Colt Patterson was a peace officer;
>
> 4.    the defendant knew Thomas Colt Patterson was attempting to arrest or detain the defendant;
>
> 5.    the attempted arrest or detention was lawful; and
>
> 6.    the defendant used a vehicle while in flight.

Holiness argues that both portions of the jury charge were erroneous because they failed to apply the mens rea requirement to the lawfulness of the detention. In other words, Holiness argues that a defendant's knowledge that a detention is lawful is a prerequisite to an evading arrest conviction and that the defendant is entitled to flee unless he knows that the detention is lawful.

While "many Texas cases have come to the conclusion that it is not necessary for the State to prove that the defendant knew that the detention was lawful," that issue is currently pending before the Texas Court of Criminal Appeals. *Nicholson v. State*, 594 S.W.3d 480, 484 (Tex. App.—Waco 2019, pet. granted in No. 10-18-00360-CR, pet ref'd in No. 10-18-00359-CR) (citing several opinions from sister courts rejecting a mens rea element as to the lawfulness of the detention); *see Day v. State*, 614 S.W.3d 121, 128 n.26 (Tex. Crim. App. 2020) (citing to

*Nicholson* and stating that whether 'the defendant's knowledge of that lawfulness of the attempted arrest or detention is also an element of the offense is an issue currently pending before this Court"). As a result, we assume error without deciding the matter.

We next examine Holiness's complaints about alleged comments on the weight of the evidence contained in the jury charge. "The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). "A trial judge must maintain neutrality in providing such information and guidance." *Id.* (citing *Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003)). "He or she may not express any opinion on the weight of the evidence or draw the jury's attention to particular facts." *Id.* (citing *Brown*, 122 S.W.3d at 798, 801). To refrain from commenting on the weight of the evidence,

> Article 36.14 of the Texas Code of Criminal Procedure provides that a jury charge: (1) must be in writing; (2) must "distinctly set[] forth the law applicable to the case[";] (3) cannot "express[] any opinion as to the weight of the evidence"; (4) may "not sum[] up the testimony"; and (5) cannot "discuss[] the facts or us[e] any argument in [the] charge calculated to arouse the sympathy or excite the passions of the jury."

*Id.* (all but second alteration in original) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). "This rule is designed to prevent a jury from interpreting a judge's comments as a judicial endorsement or imprimatur for a particular outcome." *Id.* (citing *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008) ("[A] trial court should avoid any allusion in the jury charge to a particular fact in evidence, as the jury might construe this as judicial endorsement or imprimatur.")).

7

"As a general matter, definitions for terms that are not statutorily defined are not considered to be the 'applicable law' under Article 36.14, and it is thus generally impermissible for the trial court to define those terms in the jury instructions." *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015). "To ensure compliance with Article 36.14, a trial judge should, as a general rule, avoid including non-statutory instructions" and definitions in the jury charge because they "frequently constitute impermissible comments on the weight of the evidence." *Beltran De La Torre*, 583 S.W.3d at 617 (citing *Walters v. State*, 247 S.W.3d 204, 211 (Tex. Crim. App. 2007)); *see Green*, 476 S.W.3d at 445 (citing *Celis v. State*, 416 S.W.3d 419, 433 (Tex. Crim. App. 2013) (plurality op.) ("Non-statutory instructions, even when they are neutral and relate to statutory offenses or defenses, generally have no place in the charge.")); *see also Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012). An "innocent attempt to provide clarity for the jury by including a neutral instruction [or definition] can result in an impermissible comment on the weight of the evidence because" it "'singles out a particular piece of evidence for special attention,' which the jury may then focus on as guidance from the judge." *Beltran De La Torre*, 583 S.W.3d at 617 (quoting *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000) (quoting *Matamoros v. State*, 901 S.W.2d 470, 477 (Tex. Crim. App. 1995))).[3] For this reason,

---

[3]Even so, while its "recent cases are consistent in finding that non-statutory instructions are generally disfavored, this rule is not without exceptions." *Beltran De La Torre*, 583 S.W.3d at 618. For example, the Texas Court of Criminal Appeals has "recognized that a jury charge may properly include definitions for non-statutorily defined terms that 'have a known and established legal meaning, or which have acquired a peculiar and appropriate meaning in the law, as where the words used have a well-known common law meaning.'" *Id.* (citing *Green*, 476 S.W.3d at 445 (quoting *Kirsch*, 357 S.W.3d at 650) (citing *Medford v. State*, 13 S.W.3d 769, 772 (Tex. Crim. App. 2000); *Grotti v. State*, 273 S.W.3d 273, 281 (Tex. Crim. App. 2008) ("Terms which have a technical or legal meaning may require an explicit definition.")). "Such terms are 'considered as having been used in their technical sense,' and, therefore, it is not error for the trial court to include in its instructions 'a precise, uniform definition' to guide the jury's deliberations." *Id.* (quoting *Green*, 476 S.W.3d at 445 (quoting *Medford*, 13 S.W.3d at 772)). "An instruction is particularly appropriate 'when there is a risk that the jurors may arbitrarily apply an inaccurate definition to the

the Texas Court of Criminal Appeals has routinely "been consistent in using essentially the same approach to non-statutory jury instructions" by rejecting "non-statutory instructions as improper comments on the weight of the evidence where such instructions are unnecessary to clarify the law and they also draw the jury's attention to a particular type of evidence." *Id.* at 618 (citing *Brown*, 122 S.W.3d at 796, 802–03 (rejecting instruction that "intent or knowledge may be inferred by acts done or words spoken" because, although neutral, the instruction focused jury's attention on evidence that might support finding of criminal intent, improperly told jury how to consider certain evidence, and improperly instructed jury on rule of appellate evidentiary sufficiency review)).[4]

Holiness argues that the trial court deviated from the statutory definitions found in the Texas Penal Code by providing the following definitions in the abstract portion of the jury charge:[5]

---

term or where an express definition of the term is required to assure a fair understanding of the evidence.'" *Id.* at 618–19 (citing *Grotti*, 273 S.W.3d at 281); *see Medford*, 13 S.W.3d at 772 (stating that where defendant is on trial for escape, the jury charge should define "arrest" despite the lack of a statutory definition for that term because "arrest" is a technical term with an established history in the common law, and it would be inappropriate for jurors to arbitrarily apply their personal definitions of arrest).

[4]The Texas Court of Criminal Appeals has provided the following "rule for trial judges to follow when considering whether the inclusion of a non-statutory jury instruction constitutes an impermissible comment":

> [G]enerally speaking, neither the defendant nor the State is entitled to a special jury instruction relating to a statutory offense or defense if that instruction (1) is not grounded in the Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense. In such a case, the non-statutory instruction would constitute a prohibited comment on the weight of the evidence.

*Beltran De La Torre*, 583 S.W.3d at 618 (quoting *Walters*, 247 S.W.3d at 212).

[5]Holiness also complains of the trial court's decision to define "*Intentionally Flees*" as "[a] person intentionally flees when it is his conscious objective or desire to flee." The definition of the mens rea applicable to an offense is a statutory definition. *See Cook v. State*, 884 S.W.2d 485, 488 (Tex. Crim. App. 1994). Yet, because the jury charge

9

*Knows Is a Peace Officer*

A person knows that another is a peace officer if the person is consciously aware that the other is a peace officer.[6]

*Know Another Is Attempting to Arrest or Detain*

A person knows another is attempting to arrest or detain the person if the person is consciously aware that the other is attempting to arrest or detain the person.

*Lawful Arrest*

An arrest by a peace officer is lawful without an arrest warrant if the officer has probable cause to believe the person to be arrested committed an offense in the officer's presence or view.

"Probable cause" as required for an arrest means facts known to the officer that would lead a reasonable law enforcement officer to conclude there is a reasonable probability that a specific person has engaged in criminal activity.

*Lawful Attempted Detention*

A brief detention of a person by a peace officer is lawful if the officer has "reasonable suspicion."

"Reasonable suspicion" means facts known to the officer that would lead a reasonable law enforcement officer to reasonably suspect that a specific person

---

must be tailored to the law applicable to the case, "the language in regard to the culpable mental state must [also] be tailored to the conduct elements of the offense." *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). In fact, "[a] trial court errs when it fails to limit the language in regard to the applicable culpable mental states to the appropriate conduct element." *Id.* (citing *Cook*, 884 S.W.2d at 491). "A person acts intentionally, or with intent, with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct . . . ." TEX. PENAL CODE ANN. § 6.03(a). The trial court's definition tailors the mens rea element of the offense to the statutory offense.

[6]"A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." TEX. PENAL CODE ANN. § 6.03(b).

has engaged in criminal activity, is engaging in criminal activity, or is about to engage in such activity.[7]

Here, even assuming error from the inclusion of some of the non-statutory definitions, we find that, after reviewing the entire jury charge, state of the evidence, arguments of counsel, and other relevant information, Holiness was not egregiously harmed by any jury charge error during guilt/innocence.

As for the charge itself, "[i]t is the application paragraph of the charge, not the abstract portion, that authorizes a conviction." *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). Holiness argues that the non-statutory definitions for terms used in the application paragraph drew the jury's attention to specific evidence. That said, the trial court's definitions fell into the category of an innocent attempt to provide clarity for the jury by including neutral definitions. Holiness also argues that the application paragraph omitted a required mens rea element. Texas courts have found that proving that a defendant knew his arrest or detention was lawful is not required. While this is currently the state of the law in Texas, the issue is pending in the Texas Court of Criminal Appeals. Out of an abundance of caution, we will assume, without deciding, that the state of the jury charge weighs slightly in favor of finding harm.

Even so, the state of the evidence weighs strongly against such a finding. At trial, the State proved that Holiness stole the vehicle—a fact admitted in Holiness's jailhouse calls. Because Holiness knew that he stole the vehicle, the jury was free to find that he was aware that officers were initiating a lawful arrest or detention after they discovered the stolen vehicle.

---

[7]*See Middleton v. State*, 125 S.W.3d 450, 454 (Tex. Crim. App. 2003) (definition of "probable cause" was not required in jury charge).

11

Moreover, once Holiness exceeded the speed limit and engaged officers on a dangerous, high-speed chase, the jury was also free to find that he knew that the officers' continued attempts to detain or arrest him were lawful. The recording of the high-speed chase also showed that officers had initiated their lights and sirens and that Holiness was intentionally fleeing in a motor vehicle from peace officers who were attempting to arrest or detain him—admissions he also made in jailhouse calls.

Next, while Holiness argues that the State's closing argument properly addressed the other elements of the offense,[8] he complains that it omitted "any indication [that] Appellant knew that [the] attempted arrest or detention was lawful." The State discussed at length the facts establishing that Holiness had stolen the vehicle and knew that he did not "have permission to just hop in that car and leave." While the State did not specifically argue that Holiness knew that the stop was lawful, such was implied after it noted that officers activated their lights and sirens, at which point it was Holiness's "intent . . . to treat this car like a NASCAR and to just flee and

---

[8]The State argued,

> The defendant knew Thomas Colt Patterson was a police officer when Thomas Colt Patterson gets behind him in his marked patrol car, puts on the red and blue lights that is the universal signal of "I'm a police officer, I'm behind you, pull over." He eventually activates his sirens. There's no doubt that the defendant knew that he was a peace officer and that he was attempting to arrest or detain him.

> Again, the attempted arrest or detention was lawful because Colt Patterson's L[icense] P[late] reader went off, the vehicle is stolen, he's got a reasonable suspicion that someone in that vehicle has committed a crime. He's got to stop that car and investigate it.

> The defendant used the vehicle while in flight. We saw on Colt Patterson's dash cam, the BMW being used to evade law enforcement. And that's why he's guilty of evading arrest or detention with a motor vehicle.

12

go on this hot pursuit chase with law enforcement." We find that nothing in the State's jury argument would support a finding of egregious harm.

We also conclude that nothing else in the record would support a finding of egregious harm. At trial, Holiness's defensive theory did not question the lawfulness of the detention or the knowledge that the person driving the stolen vehicle knew that police officers were attempting to detain or arrest him. Instead, Holiness's defensive theory focused on the issue of identity and argued that Holiness was not driving the vehicle.

After reviewing the record, we conclude that Holiness was not egregiously harmed by any jury charge error during guilt/innocence.

## IV. Holiness Was Not Egregiously Harmed by the Jury Charge on Punishment

In 2019, the Texas Legislature amended Article 37.07, Section 4, subsections (a) through (c), of the Texas Code of Criminal Procedure. Act of May 15, 2019, 86th Leg., R.S., ch. 260, § 3, 2019 Tex. Sess. Law Serv. 446, 446–48 (codified at TEX. CODE CRIM. PROC. art. 37.07, § 4(a)–(c) (Supp)). Those amendments apply to any defendant sentenced on or after September 1, 2019. *See* Act of May 15, 2019, 86th Leg., R.S., ch. 260, § 3, 2019 Tex. Sess. Law Serv. 446, 448. Holiness argues that the trial court erred by using an outdated version of the good conduct time and parole instructions found in Section 4(a) of Article 37.07.

The current version of Section 4(a) of Article 37.07 reads,

> "The length of time for which a defendant is imprisoned may be reduced by the award of parole.

> "Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever

13

is less.  If the defendant is sentenced to a term of less than four years, the defendant must serve at least two years before the defendant is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

"It cannot accurately be predicted how the parole law might be applied to this defendant if sentenced to a term of imprisonment, because the application of that law will depend on decisions made by parole authorities.

"You may consider the existence of the parole law.  You are not to consider the manner in which the parole law may be applied to this particular defendant."

TEX. CODE CRIM. PROC. ANN. art. 37.07, § (4)(a).  There is no reference to good conduct time in the current version of Section 4(a).  *See id.*  Yet, the trial court included references in the following portion of the jury charge, which we italicize to highlight any meaningful deviation from the statutory language:

Under the law applicable in this case (i.e., evading arrest or detention with a motor vehicle, with a finding that the defendant used or exhibited a deadly weapon during the commission of the offense or during immediate flight from committing it), *the defendant may earn time off the period of incarceration imposed through the award of good conduct time.  Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation.  If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.*

*It is also possible that* the length of time for which the defendant *will be* imprisoned *might be* reduced by the award of parole.

Under the law applicable in this case, the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or thirty years, whichever is less, *without consideration of any good conduct time he may earn*.  If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law *and good conduct time* might be applied to this defendant if he is sentenced to a term of

14

imprisonment, because the application of *these laws* will depend on decisions made by *prison and* parole authorities.

You may consider the existence of the parole law *and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant.* You are not to consider the manner in which the parole law may be applied to this particular defendant.[9]

(Emphasis added).

The State concedes that the trial court erred by including outdated language on good conduct time in the jury charge but argues that Holiness was not egregiously harmed by the error. We agree.

The last two paragraphs of the charge above instructed the jury that it was not possible to predict how parole law and good conduct time might be applied to Holiness and that they were not to consider the extent to which it might be awarded or forfeited. "We presume the jury followed these instructions given in the charge," *Murrieta v. State*, 578 S.W.3d 552, 556 (Tex. App.—Texarkana 2019, no pet.) (citing *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002)), which were "curative" of the error, *Id.* (citing *Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006)); *see Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011) (observing that it is presumed jury followed court's instructions).

Turning to the jury argument, neither good conduct time nor parole was mentioned until Holiness's closing argument, when his counsel said,

---

[9]The Legislature retained the good conduct time language in Article 37.07, Section 4(c), which was used to charge the jury in companion cause number 06-21-00039-CR. TEX. CODE CRIM. PROC. ANN. art. 37.07, § (4)(c).

15

> But now, what the law says, you concentrate on this human being now. What are we going to do? Are we going to throw him away for the next 20 years, and the law says he's got to serve at least ten before he's even considered for parole. Okay? Is that fair? Some of you may think that is fair. Some of you may not. Okay?
>
> . . . .
>
> . . . . And this young man is 24 years old. His life is not over. His life, really, is just beginning.

Even so, Holiness argues that he was harmed because the State argued, "[Holiness's] life isn't over if you give him 20 years on the evading case. He would be eligible for parole when he's 34." This statement did not mention good conduct time but dealt only with Holiness' parole eligibility and comported with Article 37.07's required instruction that he would not be eligible until the "actual time served equal[ed] one-half of the sentence imposed or 30 years, whichever is less." TEX. CODE CRIM. PROC. ANN. art. 37.07, § (4)(a). No other portion of the closing arguments referred to good conduct time.

Next, the evidence supporting the jury's assessment of punishment was strong. In the companion cases, the jury had already found Holiness guilty of unauthorized use of a vehicle and unlawful possession of a firearm by a felon. The jury also heard evidence that Holiness was previously convicted of (1) assault with a deadly weapon, (2) fraudulent use and possession of identification, (3) possession of less than two ounces of marihuana in a drug-free zone, (4) theft of items valued at greater than or equal to $750.00, but less than $2,500.00, (5) failure to identify, (6) criminal trespass, and (7) two prior convictions for evading arrest or detention. Even so, it assessed less than the maximum sentence. We believe this sentence was assessed not

16

because of the inclusion of good conduct time language, but because Holiness committed the crime with a deadly weapon and committed various other offenses.

Last, there is nothing else in the record indicating that the jury considered the application of good conduct time. There were no jury notes regarding good conduct time and nothing in the record supports a conclusion that it was applied in the assessment of Holiness's sentence. *See Murrieta*, 578 S.W.3d at 556.

Because we conclude that Holiness was not egregiously harmed by any jury charge error on punishment, we overrule his last point of error.

## V.    Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:    September 13, 2021
Date Decided:    October 1, 2021

Do Not Publish

17