

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

___

No. 06-21-00058-CR

___

JOHNNY LEN KELLOGG, Appellant

V.

THE STATE OF TEXAS, Appellee

___

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 51825-B

___

Before Morriss, C.J., Stevens and Carter,* JJ.
Memorandum Opinion by Justice Stevens

___

*Jack Carter, Justice, Retired, Sitting by Assignment

MEMORANDUM OPINION

A Gregg County jury convicted Johnny Len Kellogg of failure to register as a sex offender[1] and, after his punishment was enhanced by two prior felony convictions,[2] assessed him ninety-nine years' imprisonment. In this appeal, Kellogg (1) challenges the sufficiency of the evidence supporting his conviction and (2) asserts that the trial court erred (a) in its charge to the jury, (b) in admitting certain photographic evidence during the punishment hearing, and (c) in assessing time payment fees in its judgment. Because we find that sufficient evidence supported the conviction, that any jury-charge error did not cause egregious harm, and that any error in admitting photographic evidence was harmless, we affirm the trial court's judgment. However, we modify the judgment by deleting the time payment fees and to correct the statute of offense.

## I.      Sufficient Evidence Supports Kellogg's Conviction

In his first issue, Kellogg challenges the sufficiency of the evidence supporting his conviction. "In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous legal sufficiency review focuses on the quality of the evidence presented." *Id.* (citing

---

[1]*See* TEX. CODE CRIM. PROC. ANN. art. 62.102(b)(2).

[2]*See* TEX. PENAL CODE ANN. § 12.42(d).

*Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Williamson*, 589 S.W.3d at 297 (quoting *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985))). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004))). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id.* (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part by* 544 S.W.3d 844 (Tex. Crim. App. 2018), (citing *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

Under the statute and the indictment, the State was required to prove beyond a reasonable doubt that, on or about April 30, 2018, Kellogg (1) knew that he was required to register under Chapter 62 of the Texas Code of Criminal Procedure because of a reportable conviction for sexual battery/indecency with a child by contact, (2) resided or intended to reside in the City of Longview for more than seven days, (3) and failed to register with the local law enforcement authority in Longview by the seventh day after he arrived in Longview. *See* TEX. CODE CRIM. PROC. ANN. arts. 62.051(a)(1), 62.102(a), (b)(2). Kellogg only challenges the sufficiency of the evidence supporting the finding that he resided or intended to reside in Longview for more than seven days.[3]

Article 62.051(a) of the Texas Code of Criminal Procedure requires a person with a reportable conviction to register with the local law enforcement authority in any municipality or county "where the person resides or intends to reside for more than seven days." TEX. CODE

---

[3]Kellogg does not challenge the sufficiency of the evidence supporting the findings that he knew he was required to register under Chapter 62 because of a reportable conviction for sexual battery/indecency with a child by contact or that he failed to do so by the seventh day after his arrival in Longview. Nevertheless, the record shows that sufficient evidence established (1) that Kellogg had been convicted of sexual battery in Louisiana, an offense substantially similar to indecency with a child by contact, which is a reportable conviction under Chapter 62, *see* TEX. CODE CRIM. PROC. ANN. art. 62.001(5)(A) (Supp.), (2) that he knew of his registration requirement, and (3) that he had never registered as a sex offender in Longview.

4

CRIM. PROC. ANN. art. 62.051(a). As Kellogg correctly points out, the Texas Court of Criminal Appeals has held that the "resides" language in Article 62.051(a) "clearly envisions a person's physical presence and his establishment of a domicile." *Herron v. State*, 625 S.W.3d 144, 155 (Tex. Crim. App. 2021) (citing *Reside*, MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY (9th ed. 1986) ("to dwell permanently or continuously"; "occupy a place as one's legal domicile"); *Reside*, WEBSTER'S NEW INTERNATIONAL DICTIONARY (3d ed. 1981) (to "have a settled abode for a time: have one's residence or domicile")).

The evidence at trial relevant to Kellogg's residing in or intending to reside in Longview for seven or more days showed that, on July 6, 2017, Kellogg was arrested by Longview police. Although the arrest records identified the arrestee as "George Purland, Jr.," Captain Luke Whitehead and Detective Kirby DeLoach of the Longview Police Department (LPD) testified that the fingerprints of the arrestee taken at the time matched Kellogg's fingerprints. Also, a photograph of the arrestee taken by the LPD at the time was identified as Kellogg. At the time of the arrest, Kellogg told the arresting officer that his residence was the Globe Inn in Longview.

Kellogg was arrested a second time by the LPD on October 31, 2017, at which time he identified himself as "George W. Purland, Jr." Based on the fingerprints of the arrestee and a photograph taken at the time by the LPD, Kellogg was identified as that arrestee also. Kellogg gave his residence address at the time of that arrest as 1300 East Marshall Avenue in Longview.[4]

On June 16, 2018, Kellogg was again arrested by the LPD and identified himself as "George Purland." Based on his fingerprints and a photograph taken at the time by the LPD,

---

[4]The Globe Inn was located at 1300 East Marshall Avenue in Longview.

5

Kellogg was identified as the arrestee. At the time of his third arrest, Kellogg gave his residence address as 1300 East Marshall Avenue in Longview.[5]

The State also introduced a text message extracted from a cell phone associated with Kellogg that was sent on February 10, 2018, from Kellogg (using the alias "Skool") in which he stated that he was leaving McDonald's and was "gonna walk down toward the globe." Detective Chris Bethard testified that he believed that the text referenced the McDonald's on East Marshall and the Globe Inn, which was east of the McDonald's. The evidence also showed that there were people who lived at the Globe Inn for long periods of time.

Kellogg argues that this evidence only shows that he was staying at the Globe Inn on the days that he was arrested but does not show that he resided there for any seven-day period. However, the jury is allowed "to draw reasonable inferences from basic facts to ultimate facts." *Williamson*, 589 S.W.3d at 297 (quoting *Hooper*, 214 S.W.3d at 13). Because Kellogg consistently identified the address of the Globe Inn in Longview as his place of residence over a period of months, the jury could reasonably infer that he had continuously dwelt there during that time. *See Herron*, 625 S.W.3d at 155. For that reason, we find that sufficient evidence supported the jury's finding that Kellogg resided in Longview for seven or more days and that he failed to register with the LPD. *See Thomas v. State*, 444 S.W.3d 4, 10–11 (Tex. Crim. App. 2014) (evidence that defendant told police officer he had moved to an address different from his registered address was sufficient to show that he intended to and did reside at the new address on

---

[5]Although the fingerprint card and criminal history reporting form listed Kellogg's address as 1500 East Marshall Avenue, the arrest report and booking report listed his address as 1300 East Marshall Avenue. Whitehead testified that, during the booking process, LPD staff verifies the arrestee's then-current address.

that date); *Rollings v. State*, No. 13-02-384-CR, 2004 WL 1124471, at \*3 (Tex. App.—Corpus Christi May 20, 2004, no pet.) (mem. op., not designated for publication)[6] (holding evidence that defendant had identified his residence as an address in Ingleside in loan documents and on police reports dating from October 2001 sufficient to show that he resided in Ingleside for seven or more days). We overrule Kellogg's first issue.

## II. Jury-Charge Error

In his second and third issues, Kellogg asserts that the trial court submitted erroneous instructions in its jury charge. "We employ a two-step process in our review of alleged jury-charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 36.13). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Id.* (quoting *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14)). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to

---

[6]"Although unpublished opinions have no precedential value, we may take guidance from them 'as an aid in developing reasoning that may be employed.'" *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id.* (quoting *Lee*, 415 S.W.3d at 917; *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

### A. Any Error in the Trial Court's Date of Offense Instruction Did Not Result in Egregious Harm

In its jury charge during the guilt/innocence phase, the trial court included the following instruction:

> ***Date of offense***:  You are further charged as the law in this case that the State is not required to prove the exact date alleged in the indictment but may prove the offense, if any, to have been committed any time prior to the day on which the indictment was presented.  In this case, the Court has taken judicial notice that the indictment was presented on the 29th day of April, 2021.  You are instructed that the jury may, but is not required to[,] accept as conclusive any fact judicially noticed.[7]

Kellogg argues that this instruction was erroneous because it did not advise the jury of the applicable three-year statute of limitations, and it did not limit the jury's consideration to conduct that occurred within the limitations period.

As Kellogg points out, the Texas Court of Criminal Appeals has held that, when an indictment, as in this case, alleges that an offense occurred on or about a certain date, "the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997). Consequently, generally when the trial court gives an "on or about" instruction, in addition to

---

[7]This instruction is commonly referred to as an "on or about" instruction. *See, e.g.*, *Brown v. State*, No. 02-14-00285-CR, 2016 WL 673541, at *4 (Tex. App.—Fort Worth Feb. 18, 2016, no pet.) (mem. op., not designated for publication).

8

instructing the jury that the State "may prove the offense, if any, to have been committed any time prior to the day on which the indictment was presented," the jury will be further instructed "so long as said offense, if any, occurred within (the applicable statute of limitations)"[8] and will then be give an instruction regarding when the indictment was presented.[9]

Even so, as the State points out, the Texas Court of Criminal Appeals has also held that the statute of limitations is a defensive issue that "is forfeited if not asserted at or before the guilt/innocence [phase] of trial." *Proctor v. State*, 967 S.W.2d 840, 844 (Tex. Crim. App. 1998); *see also Ex parte Heilman*, 456 S.W.3d 159, 169 (Tex. Crim. App. 2015) (reaffirming *Proctor*'s holding that limitations defenses, except those involving legislative *ex post facto* violations, are forfeitable rights). The court acknowledged that, if the defendant requests a jury instruction on limitations and there is some evidence that the prosecution is limitations-barred, then the trial court must give a limitations instruction. *Proctor*, 967 S.W.2d at 844. But it went on to hold that, if the limitations defense is not raised before or during the guilt/innocence phase of trial, the State is not required to prove beyond a reasonable doubt that the prosecution is not barred by limitations. *Id.* at 845.

In addition, although Article 36.14 requires the "trial court [to] submit a charge setting forth the law 'applicable to the case,'" it does not impose a duty on the trial court "to *sua sponte* instruct the jury on unrequested defensive issues." *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). Rather, "a defensive issue

---

[8]*Brown*, 2016 WL 673541, at *4. The applicable statute of limitations in this case is three years. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(8) (Supp.).

[9]*See, e.g.*, *Brown*, 2016 WL 673541, at *4.

is not 'applicable to the case' for purposes of Article 36.14 unless the defendant timely requests the issue or objects to the omission of the issue in the jury charge." *Id.* In such an instance, "a trial court does not err by failing to instruct the jury on an issue that was, by virtue of the defendant's silence, simply inapplicable to the case." *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018).

In this case, there was evidence from which the jury could infer that Kellogg committed the offense either at a time that was barred by the statute of limitations or at a time that was not limitations-barred. Nevertheless, Kellogg did not assert the limitations defense before or at the guilt/innocence phase. He also did not request an instruction on limitations or object to the absence of an instruction on limitations in the jury charge.

The trial court was obligated to "submit a charge setting forth the 'law applicable to the case.'" *Murrieta*, 578 S.W.3d at 554 (quoting *Lee*, 415 S.W.3d at 917) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). So, the determination of whether, under the circumstances of this case, the trial court was required to include in its "on or about" instruction language limiting the jury's consideration to an offense that occurred within the statute of limitations requires a determination of the law applicable to this case. Kellogg argues that, because the indictment alleged an on or about date, under *Sledge*, the State was only allowed to prove a date of offense within the statute of limitations, and consequently, the "on or about" instruction must contain the limiting language. The State argues that, since Kellogg never raised a statute of limitations issue at or before the guilt/innocence phase of the trial, under *Proctor*, the State had no obligation to prove that the prosecution was not limitations-barred, and because limitations was an unasserted

10

defensive issue, it was not law applicable to the case. Consequently, the State argues that the trial court did not err by not including the limiting language in its "on or about" instruction.

Neither Kellogg nor the State has cited, and we have not found, any authority determining whether, under circumstances similar to this case, a trial court errs by not including language limiting the jury's consideration to an offense that occurred within the statute of limitations when it gives an "on or about" instruction. And we need not make this determination since, even if we assume the trial court erred, any error did not result in egregious harm.

"The level of harm necessary to require reversal due to jury charge error is dependent upon whether the appellant properly objected to the error." *Id.* at 555 (citing *Abdnor*, 871 S.W.2d at 732). Because Kellogg did not object to the charge, we will not reverse the judgment "unless the record shows the error resulted in egregious harm, *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)), such that he did not receive a fair and impartial trial." *Id.* (citing *Almanza*, 686 S.W.2d at 171; *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.)). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)). "In making this determination, we review 'the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole.'" *Id.* (quoting *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171)).

11

"Direct evidence of harm is not required to establish egregious harm." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

In support of his argument that the instruction caused him egregious harm, Kellogg points to the evidence of his arrests in Longview on July 6, 2017, October 31, 2017, and June 16, 2018, two of which dates fell outside the applicable statute of limitations. He also points to one statement in the State's final argument in which the State told the jury that it could make reasonable inferences from the timeline that showed that Kellogg claimed to be living in Longview from July 6, 2017, to June 16, 2018.

That said, the record, as a whole, showed that the evidence of Kellogg's presence in Longview on various dates before April 29, 2018, was in support of the State's allegation that, on or about April 30, 2018, Kellogg failed to register as a sex offender when he resided or intended to reside in Longview for seven or more days. In its opening statement, the State informed the jury that it was going to prove that Kellogg failed to register as a sex offender on April 30, 2018. Further, in its final argument, the State on three occasions pointed the jury to the April 30, 2018, to June 16, 2018, timeframe as the relevant time in which it was required to find that Kellogg failed to register when he resided, or intended to reside, in Longview for seven or more days. This was consistent with the trial court's instruction in the application portion of its charge that required the jury to find beyond a reasonable doubt that, on or about April 30, 2018, Kellogg resided or intended to reside in Longview for more than seven days and failed to register by the seventh day of his arrival in the jurisdiction. Although the State also pointed to the evidence that showed Kellogg claimed to be living in Longview when he was arrested in 2017,

12

and the text messages indicated that he was in Longview in February 2018, it was in the context of explaining to the jury that it could make reasonable inferences from this evidence that Kellogg resided or intended to reside in Longview for more than seven days during the April 30, 2018, to June 16, 2018, time period.

Kellogg also stressed to the jury, both in his opening statement and in final argument, that the main issue in the case was whether the State proved that he resided or intended to reside in Longview for more than seven days on April 30, 2018. In his final argument, Kellogg went on to argue that the State's evidence that he was arrested in Longview on July 6 and October 31, 2017, did not show that he intended to reside or resided in Longview then, or on April 30, 2018.

Finally, Kellogg did not make a statute of limitations objection to the arrest records from 2017 or to the phone records that showed his presence in Longview before April 30, 2018. Neither did he ask for an instruction limiting the jury's consideration of that evidence. As a result, the jury was free to consider the evidence for all purposes, including as evidence that Kellogg resided in, or intended to reside in, Longview on or about April 30, 2018.

Based on this record, we cannot say that any alleged error in the trial court's "on or about" instruction affected the very basis of the case, deprived Kellogg of a valuable right, or vitally affected a defensive theory. *See Murrieta*, 578 S.W.3d at 555. For that reason, we find that the error, if any, did not result in egregious harm. We overrule Kellogg's second issue.

### B. Kellogg Forfeited His Complaint Regarding the Sexually Violent Offense Instruction

The jury charge at the guilt/innocence phase also included the following instruction:

**Relevant Statutes**

A person commits the offense of **"Failure to Comply with Sex-Offender Registration Requirements"** if he is required to register and fails to comply with any requirement of Chapter 62 of the Texas Code of Criminal Procedure:

The duty to register for a person ends when the person dies if the person has a reportable conviction for a sexually violent offense.

1) Indecency with a Child by sexual contact is a sexually violent offense.

On appeal, Kellogg asserts that describing the predicate offense as a "sexually violent offense" was unnecessary, superfluous, not helpful or instructive, that it was a comment on the weight of the evidence, and that it was "unnecessarily prejudicial and was reasonably calculated to cause . . . the rendition of an improper judgment." Other than these conclusory statements, Kellogg provided no substantive analysis and cited no applicable authority in support of the statements. In addition, although Kellogg set forth the standard for analyzing harm caused by jury-charge error, he provided no harm analysis other than a conclusory statement that the error was calculated to injure his rights and deprived him of a fair and impartial trial.

"Rule 38.1([i]) of the Texas Rules of Appellate Procedure requires that a brief contain 'a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.'" *Fowler v. State*, No. 06-20-00030-CR, 2020 WL 6731733, at *4 (Tex. App.—Texarkana Nov. 17, 2020, no pet.) (mem. op., not designated for publication) (quoting TEX. R. APP. P. 38.1(i)). "An issue is inadequately briefed when an 'appellant does not address the

14

question of whether the alleged error . . . was harmless.'" *Id.* (quoting *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000)); *see Pizano v. State*, No. 13-11-00249-CR, 2012 WL 1964553, at *11 (Tex. App.—Corpus Christi May 31, 2012, pet. ref'd) (mem. op., not designated for publication); *Beavers v. State*, No. 2-05-448-CR, 2006 WL 3247887, at *6 (Tex. App.—Fort Worth Nov. 9, 2006, pet. ref'd) (mem. op., not designated for publication). It is also inadequately briefed when an appellant "neglect[s] to present argument and authorities as required by" Rule 38.1(i). *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000); *see Beavers*, 2006 WL 3247887, at *6. For these reasons, Kellogg has forfeited this complaint. *See Fowler*, 2020 WL 6731733, at *4. We, therefore, overrule this issue.

## III.    Admitting Photographic Evidence at the Punishment Phase

In his fourth issue, Kellogg complains that the trial court erred in admitting photographs taken at the scene of an arson, and seven photographs and a recording depicting child pornography obtained from the cell phone connected to Kellogg, during the punishment phase of his trial. Kellogg argues that the photographic evidence was inadmissible under Rule 403 of the Texas Rules of Evidence because its probative value was substantially outweighed by a danger of unfair prejudice.

Although Kellogg combines his complaint regarding the admission of the arson scene photographs and the pornographic photographs and recording and analyzes them together, we analyze them separately.

15

## A.      Kellogg's Complaint Regarding the Arson Photographs Was Not Preserved

As to his complaint regarding the arson photographs, twenty-three photographs of the burned-out remains of a house in Longview were offered, collectively, into evidence. Those photographs depicted the charred remains of the inside and outside of the house and included several photographs that showed the charred remains of a human body, identified as Johnny Miller. At trial, Kellogg objected to all the photographs under Rule 403 of the Texas Rules of Evidence, without specifying which photographs he claimed were unfairly prejudicial. On appeal, Kellogg only asserts that the photographs containing images of charred human remains (without identifying which exhibits contained those images) had the potential to impress the jury in an irrational way.

To preserve a complaint for appellate review, "a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context." *Layman v. State*, No. 06-21-00003-CR, 2021 WL 5972092, at *2 (Tex. App.—Texarkana Dec. 17, 2021, pet. filed) (mem. op., not designated for publication) (citing TEX. R. APP. P. 33.1(a)(1)). Further, "[w]hen an exhibit contains both admissible and inadmissible evidence, the objection must specifically refer to the challenged material to apprise the trial court of the exact objection." *Id.* (quoting *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995)). If the objection does not specifically point out which part of the evidence is inadmissible, then it is insufficient to preserve any error in the admission of the evidence. *See Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009). Because Kellogg only lodged a

16

general objection to all the photographs without specifying which photographs that he claimed were inadmissible, he has not preserved this complaint for our review. *See id.*

**B.        Any Error in Admitting the Child Pornography Images Was Harmless**

Kellogg did preserve his complaint regarding the photographic evidence containing child pornography.  "Under Article 37.07 of the Texas Code of Criminal Procedure, any evidence that the trial court 'deems relevant to sentencing' is admissible during the punishment phase of a trial." *Gilbert v. State*, 575 S.W.3d 848, 871 (Tex. App.—Texarkana 2019, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1)); *see Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008).  "If the evidence 'will assist the fact[-]finder in deciding the appropriate sentence in a particular case,' it is relevant to determining punishment." *Gilbert*, 575 S.W.3d at 871 (quoting *Sims*, 273 S.W.3d at 295 (citing *Mendiola v. State*, 21 S.W.3d 282, 285 (Tex. Crim. App. 2000))).  During the punishment phase, character evidence is admissible in the form of both opinion testimony and extraneous-offense evidence, notwithstanding Rules 404 and 405 of the Texas Rules of Evidence.  TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Supp.); *Sims*, 273 S.W.3d at 296–97.

"That said, even if punishment-phase evidence is deemed relevant, it is subject to analysis under Rule 403."[10]  *Gilbert*, 575 S.W.3d at 871 (citing *Rodriguez v. State*, 203 S.W.3d 837, 843 (Tex. Crim. App. 2006)).  To determine the admissibility of evidence under Rule 403, the trial court must consider these factors:  "(1) how probative is the evidence; (2) the potential

---

[10]Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."  TEX. R. EVID. 403.

of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Salazar v. State*, 90 S.W.3d 330, 336 (Tex. Crim. App. 2002) (citing *Solomon v. State*, 49 S.W.3d 356, 366 (Tex. Crim. App. 2001)). "The trial court is presumed to have engaged in this analysis." *Gilbert*, 575 S.W.3d at 871 (citing *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997)). "We review the trial court's analysis under an abuse-of-discretion standard and will only overturn its ruling if it falls outside the 'zone of reasonable disagreement.'" *Id.* (quoting *Rodriguez*, 203 S.W.3d at 843 (quoting *Robbins v. State*, 88 S.W.3d 256, 260 (Tex. Crim. App. 2002))).

Kellogg argues that the probative value of the pornographic images was slight because, he contends, there was only a tenuous connection between the cell phone and him and there was evidence that other persons also used the cell phone. He also argues that the images of child pornography were calculated to shock, inflame, and anger the jury and that they had the potential to impress the jury in an irrational and indelible way, thereby influencing the jury's sentence. In addition, he contends that the State spent an inordinate amount of time developing the evidence and that the State's need for the evidence was slight since Detective Bethard had already testified that the cell phone contained images of child pornography.

The State argues that there was sufficient evidence both that the cell phone had been owned by Kellogg and that he was using it when the child pornography was downloaded. It also argues that it needed the photographic evidence so the jurors could judge for themselves that it was indeed child pornography. The State also points out that there were only seven photographs

18

and a short recording and argues that the danger of impressing the jury in an irrational way was slight.

Even so, we need not decide whether the trial court abused its discretion in admitting the photographs and video, since even if we assume that the trial court abused its discretion, any error was harmless. "We review a trial court's decision to admit extraneous-offense evidence during the punishment phase for an abuse of discretion." *Paroline v. State*, 532 S.W.3d 491, 502 (Tex. App.—Texarkana 2017, no pet.) (citing *Beham v. State*, 476 S.W.3d 724, 735 (Tex. App.—Texarkana 2015), *rev'd on other grounds*, 559 S.W.3d 474 (Tex. Crim. App. 2018) (citing *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002))). "If the trial court errs in admitting extraneous-offense evidence in the punishment phase, it is a non-constitutional error." *Id.* (citing *Beham*, 476 S.W.3d at 738 (citing *Higginbotham v. State*, 356 S.W.3d 584, 592 (Tex. App.—Texarkana 2011, pet. ref'd))). "We disregard a non-constitutional error unless it affects the defendant's 'substantial rights.'" *Id.* (citing *Beham*, 476 S.W.3d at 738 (citing TEX. R. APP. P. 44.2(b))). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Haley v. State*, 173 S.W.3d 510, 518 (Tex. Crim. App. 2005)). "We will not reverse the trial court's judgment for a non-constitutional error if, after reviewing the entire record, we have 'fair assurance that the error did not influence the jury, or had but a slight effect.'" *Id.* (quoting *Beham*, 476 S.W.3d at 738 (quoting *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)))).

"In determining whether the jury's decision may have been adversely affected by the error, we

> consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.

*Id.* (quoting *Beham*, 476 S.W.3d at 738–39 (quoting *Haley v. State*, 173 S.W.3d 510, 518–19 (Tex. Crim. App. 2005) (citations omitted))).

During the guilt/innocence phase of the trial, the jury heard evidence and found that Kellogg had been convicted of sexual battery of a child in Louisiana in 2005, which was an offense substantially similar to the Texas offense of indecency with a child by contact. At the punishment phase, the jury learned that Kellogg was around thirty-five years old when he committed that offense and that the victim was six or seven years old. It also learned that Kellogg had been convicted of failure to register as a sex offender in Louisiana in 2010 and again in 2013 and that he had been released from prison for the last offense in September 2016. In addition, the evidence showed that, in 1989, Kellogg was convicted of attempted robbery with a deadly weapon and possession of a dangerous weapon in Louisiana.

Also, during the guilt/innocence phase the jury heard evidence that between July 2017 and June 2018, Kellogg had been arrested three times in Longview and had given the LPD fictitious names when identifying himself. The evidence at that phase also showed that a cell phone later retrieved by the LPD from a third-party seller contained Kellogg's photograph in the user profile. That cell phone also contained a screen name of "Reubin Ackworth" with

Kellogg's photograph associated with Ackworth's Facebook account and contained text messages in which Kellogg used "Skool" as another fictitious name. There was another Facebook account accessed on the cell phone in the name of "Drago Xanders" that also had Kellogg's photograph associated with the account.

At the punishment hearing, Detective Bethard testified that the cell phone contained seven images and a recording that contained child sexual abuse. He also testified that the recording was downloaded and that the seven images were created shortly before an email account belonging to "Reubin Ackworth" was accessed on the cell phone.

In addition to seeing the arson photographs, the jury heard testimony that the fire occurred on May 9, 2018, that Miller's body had been discovered in the fire debris, that the body had been bound at the wrists and ankles, that there were multiple layers of fabric around the body, and that it appeared that the fire had been set on top of the fabric. Testimony showed that the only fingerprints identified at the fire scene belonged to Miller, Kellogg, and Kellogg's girlfriend.

During the investigation of the arson fire, witness interviews indicated that Miller's blue van was missing from the residence. On May 10, 2018, the LPD found the vehicle parked at Gene's Grocery in Longview. Recordings taken by the security cameras at Gene's Grocery at around four o'clock on the afternoon of May 10 showed the van pull up and back into a parking spot and a man exit the driver's side of the van a few minutes later, who then walked to, then down, the street and away from the store. Detective DeLoach testified that Kellogg's

21

fingerprints were found on the outside of the passenger side, on the inside passenger window, and on the driver's side of Miller's minivan and on Miller's television that had been pawned.

In its punishment charge, the trial court instructed the jury that it was not to consider evidence of other wrongful acts, unless it found beyond a reasonable doubt that Kellogg committed the other wrongful acts. Also, during its closing arguments, the State stressed Kellogg's prior conviction for child sexual battery, his three convictions for failure to register as a sex offender, and his conviction for attempted robbery. It also stressed the evidence linking Kellogg to the arson fire, the murder of Miller, and the theft of Miller's property. The State only referred to the evidence of child pornography in a short, three-sentence portion of its argument. The argument, in total, consisted of ten and one-half pages of transcript.

Although Kellogg received the maximum sentence, it is not unlikely that the evidence of his original conviction for sexual battery of a young child, his repeated failure to register as a sex offender, his attempt to hide his true identity both from law enforcement and on social media, and the testimony that child pornography was downloaded on his cell phone shortly before he accessed his email account convinced the jury that he presented a continuing danger to children and was deserving of a lengthy sentence. In addition, if the jury was convinced that Kellogg was involved in the arson fire, Miller's death, and the theft of Miller's property,[11] along with his prior conviction for a violent offense, then it could have been convinced that he also presented a danger to the community. For these reasons, we have a fair assurance that any error in admitting the photographs and recording containing images of child pornography had little or no effect on

---

[11]During the jury's deliberation in the punishment phase, the jury requested, and was provided, equipment to enable it to view the recording taken by the security cameras at Gene's Grocery.

the jury's punishment assessment. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We overrule Kellogg's fourth issue.

## IV. The Judgment Must Be Modified

Kellogg also challenges the trial court's assessment of a time payment fee as part of the costs of court. He argues that the time payment fee is unconstitutional and, in the alternative, that his filing of an appeal suspended his obligation to pay court costs. The State agrees that the assessment of the time payment fee was premature.

In this case, the trial court's judgment included court costs of $355.00 and reimbursement fees of $40.00. The certified bill of costs listed costs of court totaling $395.00,[12] which included a time payment fee of $15.00. The bill of costs also provided that "[a]n additional time payment fee of $25.00 [would] be assessed if any part of a fine, court costs, or restitution [was] paid on or after the 31st day after the date the judgment assessing the fine, court costs, or restitution [was] entered," citing Section 133.103 of the Texas Local Government Code. We have previously noted that "the Texas Court of Criminal Appeals has recently concluded that a time payment fee like the one imposed here 'must indeed be struck for being prematurely assessed because a defendant's appeal suspends the duty to pay court costs and therefore suspends the running of the clock for the purposes of the time payment fee.'" *Lowe v. State*, No. 06-20-00108-CR, 2021 WL 2964272, at *2 (Tex. App.—Texarkana July 15, 2021, no pet.) (mem. op., not designated for publication) (quoting *Dulin v. State*, 620 S.W.3d 129, 129 (Tex. Crim. App. 2021)). "As a consequence, even now, assessment of the time payment fee in this case would be premature

---

[12]It appears that the trial court designated one of the court costs as a reimbursement.

because appellate proceedings are still pending." *Id.* (quoting *Dulin*, 620 S.W.3d at 129). For that reason, "we strike the time payment fees 'in their entirety, without prejudice to them being assessed later if, more than 30 days after the issuance of the appellate mandate, the defendant has failed to completely pay any fine, court costs, or restitution that he owes.'" *Villegas v. State*, No. 06-20-00063-CR, 2021 WL 2446747, at *2 (Tex. App.—Texarkana June 16, 2021, no pet.) (mem. op., not designated for publication) (quoting *Dulin*, 620 S.W.3d at 133). We sustain this issue.[13]

Also, the judgment of conviction incorrectly states that the statute of offense is "62.102(b)(2) Penal Code." "[A]ppellate courts 'have the authority to reform judgments and affirm as modified in cases where there is nonreversible error.'" *Sharpe v. State*, 607 S.W.3d 446, 448 (Tex. App.—Texarkana 2020, no pet.) (quoting *Ferguson v. State*, 435 S.W.3d 291, 293 (Tex. App.—Waco 2014, pet. struck) (comprehensively discussing appellate cases that have modified judgments)). For that reason, we modify the trial court's judgment to reflect that the correct statute of offense is Article 62.102(b)(2) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 62.102(b)(2).

## V.    Conclusion

We modify the bill of costs by deleting the time payment fee of $15.00, by deleting the phrase "[a]n additional time payment fee of $25.00 will be assessed if any part of a fine, court costs, or restitution is paid on or after the 31st day after the date the judgment assessing the fine,

---

[13]Because of our disposition of striking the time payment fee as prematurely assessed and because we should "avoid[] the adjudication of constitutional issues when at all possible," we do not address Kellogg's constitutional challenge. *Dulin v. State*, 620 S.W.3d 129, 133 n.29 (Tex. Crim. App. 2021) (quoting *Pena v. State*, 191 S.W.3d 133, 136 (Tex. Crim. App. 2006)).

court costs, or restitution is entered," and to reflect total court costs of $380.00.  We modify the trial court's judgment to reflect court costs of $340.00 and to reflect that the statute of offense is Article 62.102(b)(2) of the Texas Code of Criminal Procedure.  As modified, we affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:    December 10, 2021
Date Decided:    March 2, 2022

Do Not Publish