

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-18-00163-CR

---

JEREMY DAKOTA MURRIETA, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR 18-036

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

# O P I N I O N

## I. Factual and Procedural Background

Jeremy Dakota Murrieta was found guilty of the aggravated sexual assault of his wife's six-year-old daughter, Nina,[1] and was sentenced to forty years' imprisonment. Murrieta argues that, during punishment, the trial court erred in submitting the wrong instruction to the jury on the effect of parole law. We affirm the trial court's judgment because the jury-charge error did not cause Murrieta egregious harm.

## II. Analysis

### A. Did the Trial Court Err in Instructing the Jury on the Effect of Parole Law?

#### 1. Standard of Review

Murrieta argues on appeal that the trial court erred in submitting an incorrect parole instruction to the jury during the punishment phase of his trial. We employ a two-step process in our review of alleged jury-charge error. *See Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d

---

[1]To protect the minor child's privacy, we refer to her by a pseudonym. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2018).

2

915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007)). "The purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury:  it is the function of the charge to lead and prevent confusion." *Id*. (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

The Texas Code of Criminal Procedure "specifically sets out three lengthy, alternative jury charges concerning the parole law; and those are to be chosen based on a very exacting and at least potentially confusing set of conditions." *Stewart v. State*, 293 S.W.3d 853, 855 (Tex. App.—Texarkana 2009, pet. ref'd) (citing TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a)–(c) (West 2018)). "Depending on the offense of which a defendant has been convicted, whether his . . . sentence is to be enhanced, and whether a deadly-weapon finding has been made . . . , the trial court is to select which one of the three alternatives will be given to the jury." *Id*. at 855–56. Murrieta contends that the trial court instructed the jury under the incorrect subsection.

### 2.    Application of the Standard of Review

The trial court's charge on punishment instructed the jury:

Under the law applicable in this case, if the Defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good time earned equals one-half of the sentence imposed. Eligibility for parole does not guarantee that parole will be granted.

Murrieta argues that the charge should have been based on Article 37.07, Section 4(c), which reads, in pertinent part:

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, *the defendant will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less,*

3

*without consideration of any good conduct time the defendant may earn.* If the defendant is sentenced to a term of less than four years, the defendant must serve at least two years before the defendant is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (emphasis added).

Murrieta is correct that the trial court erred in instructing the jury that Murrieta's good conduct time could expedite his eligibility for parole. The instruction in Section 4(a) should be given in the trial of "an offense listed in Article 42A.054(a)," and aggravated sexual assault of a child is listed in Article 42A.054(a). TEX. PENAL CODE ANN. § 22.021 (West 2019); *see* TEX. CODE CRIM. PROC. ANN. art. 37.07, art. 4(a), 42A.054(a)(8) (West 2018). Accordingly, the trial court erred in instructing the jury under Section 4(c). *See* TEX. PENAL CODE ANN. § 22.021; *see* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a), art. 42A.054(a)(8). Having found error, we must determine if the error was harmful.

### B. Was the Trial Court's Error Harmful?

#### 1. Standard of Review

The level of harm necessary to require reversal due to jury charge error is dependent upon whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. Here, because Murrieta did not object to the charge, we will not reverse unless the record shows the error resulted in egregious harm, *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)), such that he did not receive a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171; *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive

4

theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). In making this determination, we review "the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole." *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171). Direct evidence of harm is not required to establish egregious harm. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

Courts generally agree that the statutory parole instructions were designed to favor the State and to increase sentences. *See Arnold v. State*, 786 S.W.2d 295, 300 (Tex. Crim. App. 1990). However, the instructions can also help the defendant, because the jury could learn that the defendant would serve longer than it expected and could be influenced to assess less time. *Hooper v. State*, 255 S.W.3d 262, 272 (Tex. App.—Waco 2008, pet. ref'd); *Williams v. State*, 975 S.W.2d 375, 378 (Tex. App.—Waco 1998, pet. ref'd).

### 2. Application of the Standard of Review

As noted, the jury was erroneously instructed that good conduct time could be considered in determining when Murrieta would be eligible for parole. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a), (c). However, one paragraph after the erroneous instruction, the charge instructed the jury that it could "consider the existence of parole law and good conduct time," but it was "not to consider the extent to which good conduct time may be awarded to or forfeited by this particular Defendant." It also instructed the jury "not to consider the manner in which the parole law may be applied to this particular Defendant." We presume the jury followed the instructions given in the charge. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *Luquis v. State*, 72

5

S.W.3d 355, 366 (Tex. Crim. App. 2002). A curative instruction, in combination with other factors, may cure any error. *See Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006). Here, the jury did not send any notes to the trial court regarding parole or its effect on Murrieta's length of incarceration, and there was no testimony asserting juror misconduct. There is nothing else in the record to indicate the jury failed to heed the trial court's admonition against considering how the operation of parole might apply to Murrieta's term of actual imprisonment.

There was also strong evidence supporting Murrieta's forty-year sentence. For instance, it was undisputed that the bedroom door was blocked shut with a container of clothing and that Murrieta's wife, Maria, found Murrieta naked in bed with six-year-old Nina, who was also naked. Maria testified that Nina told her that Murrieta had taken her clothes off. While pointing to her vaginal area, she told the Sexual Assault Nurse Examiner (SANE) that Murrieta had touched her with his "part." During her forensic interview the following day at the Children's Advocacy Center, Nina denied making the outcry to the SANE nurse, but at trial she testified that Murrieta had hurt her on her private parts. Murrieta claimed that, while the child was sleeping in the bed with him, he used a lubricant to masturbate and then fell asleep. However, the jury could have rejected this testimony because Nina's older sister, Elena, testified that Nina was covered, from navel to knees, in a lubricant and because Murrieta had no explanation for why Nina was naked.

There was also testimony from Maria and Elena that Murrieta tried to take her truck keys and cell phone to prevent Maria from leaving with the children. Murrieta texted Maria that, if she would "keep everybody out of it," he would be out of their lives, and prior to trial, Murrieta offered, in writing, to relinquish his parental rights to his and Maria's other children in exchange for the

6

case being dismissed. The jury could have reasonably viewed those actions as evidence that Murrieta knew he was guilty and that he was trying to avoid the consequences of his actions.

Also, Nina was just six years old at the time of the offense, and she was particularly vulnerable to Murrieta because she was, essentially, his stepdaughter. While there was no evidence that Murrieta had assaulted Nina at any other time, Murrieta had a prior juvenile adjudication for indecency with a child. The forty-year sentence Murrieta received is in the lower half of the punishment range, and it does not support a conclusion that the jury considered how the parole law might be applied to him or otherwise acted on the erroneous instruction language.

Finally, the State argued that Murrieta deserved "life in prison," but it did not mention parole or good time conduct in its arguments. And Murrieta's counsel urged the jury to sentence Murrieta to the fifteen-year minimum sentence because he would have to serve at least seven and one-half years. Thus, Murrieta argued the correct application of parole law and did not reference the erroneous language in the charge.

### 3. Analysis of Precedent Cited by Murrieta

Murrieta cites to several of this Court's opinions in support of his argument that the error caused egregious harm. For the reasons stated below, we find that these cases do not support Murrieta's argument.

In *Villareal*, the trial court omitted the mandatory parole instruction from the charge on punishment, and no one objected to the omission. *Villareal*, 205 S.W.3d at 105. After the jury began deliberations, it asked the trial court, "Is it possible to find out how many years he would actually serve compared to how many we sentence?" *Id*. The trial court responded, "No. Such

7

information is completely beyond our control.  It is controlled entirely by the Board of Pardons and Paroles." *Id.*  This Court held that the omission of the parole instruction was not egregiously harmful, but that, once the jury expressed its concern with the application of parole law, the trial court was required to give the mandatory parole instruction.  *Id.* at 107–110.  We further held that the trial court's failure to do so constituted egregious harm.  *Id.*

In *Stewart v. State*, the jury was instructed that the defendant would be parole eligible when his good time plus actual time served equaled one-fourth of the sentence imposed, but under the proper instruction, Stewart would not have been eligible for parole until he served one half of the sentence imposed, without regard for good time.  *Stewart*, 293 S.W.3d at 856.  The jury was instructed that it was not to consider the application of parole law to Stewart, nothing in the evidence suggested that the jury acted on the erroneous language, and unlike the present case, both the State and the defense made parole a subject of their argument and both argued the incorrect charge language.  *Id*. at 858.  Despite the arguments of counsel, this Court found that egregious harm had not been established.  *Id*. at 859.

In the present case, the jury did not send any notes to the trial court regarding parole or its effect on Murrieta's length of incarceration.  Moreover, nothing indicates that the jury failed to follow the trial court's curative instruction not to consider how parole law or good conduct time could be applied to Murrieta.  Also, neither the State nor Murrieta focused on the erroneous instruction in their arguments.  Accordingly, we find that *Villareal* and *Stewart* are distinguishable from the present case.

8

Murrieta next cites to *Hill v. State*, 30 S.W.3d 505, 507 (Tex. App.—Texarkana 2000, no pet.). While *Hill* might provide some support for Murrieta's claim that he was harmed by the instruction, we find that *Hill* is no longer good law. In *Hill*, the jury was erroneously instructed that the defendant's good conduct time could expedite his eligibility for parole, whereas the jury should have been instructed that the defendant's parole eligibility would be determined without consideration for any good conduct time. *Id.* In a 2-1 decision, we concluded that the erroneous language, alone, constituted egregious harm, despite the presence of a curative instruction and other factors. *Id.* at 509 (Cornelius, C.J., dissenting).

In his dissenting opinion, Chief Justice Cornelius noted that the jury is presumed to follow a court's charge, and the charge "directly and explicitly told [the jury] not to consider how parole law might apply to Hill." *Id*. at 509 (Cornelius, C.J., dissenting). He also noted that the State did not ask for a "99[-] or 75[-] [year sentence], or anything like that," but instead argued ,"[You] need to give Mr. Hill no less than 30 years." *Id*. Likewise, Chief Justice Cornelius noted that the State "did not . . . mention . . . erroneous language in the charge, and . . . did not urge the jury to assess the thirty-five year [sic] sentence to compensate for a possible early parole." *Id*. He also noted that Hill committed the three armed robberies on the same day, which was less than four months after he was released from the Texas Youth Commission, where he had been serving a sentence for "drug use and possession of a firearm." *Id*. Based on these factors, Chief Justice Cornelius concluded that Hill was not egregiously harmed by the incorrect parole instruction. *Id*. at 510.

At the time we decided *Hill*, there was little caselaw addressing the harmfulness of an express misstatement of the mandatory parole instructions under Article 37.07, Section 4(a). *Id.*

9

at 508. One year after we decided *Hill*, one of our sister courts disagreed with our opinion. *See Newman v. State*, 49 S.W.3d 577, 581 (Tex. App.—Beaumont 2001, pet. ref'd) (recognizing, but disagreeing with, *Hill*). In our subsequent opinions—while we did not directly overrule *Hill*—we distinguished *Hill* based on the factors identified by Chief Justice Cornelius in his dissenting opinion.

For example, in *Taylor v. State*, we noted that, after *Hill*, the Texas Court of Criminal Appeals issued *Ross v. State*, and we concluded,

> With *Ross* in mind, we do not believe the erroneous parole instruction affected the very basis of Billy's sentence, deprived him of an essential right, vitally affected a defensive theory, or made the case for punishment "clearly and significantly more persuasive"—as is required to establish egregious harm. In reaching this conclusion, we have reviewed the entire charge, the state of the evidence, counsels' arguments, and all other relevant information in the record; we cannot say Billy has satisfied his burden of demonstrating he suffered "egregious harm." While the trial court's instruction is clearly erroneous, there is nothing in the record that suggests the jury did not follow the trial court's instruction to not consider how good conduct time might apply to Billy. The jury sent no notes that might otherwise reveal either improper conduct or confusion among the jurors regarding the erroneous instruction. Additionally, the State did not reference the issue of parole in its punishment arguments, and the parole charge did not otherwise suggest Billy necessarily would be released from prison after he became eligible for parole. Accordingly, we affirm the trial court's judgment.

*Taylor v. State*, 146 S.W.3d 801 (Tex. App.—Texarkana 2004, pet. ref'd) (citations omitted) (citing *Ross v. State*, 133 S.W.3d 618, 624 (Tex. Crim. App. 2004)); *see Stewart*, 293 S.W.3d 853 (while citing *Hill*, finding that erroneous parole instruction did not cause appellant egregious harm based on the same factors cited by Chief Justice Cornelius in his dissenting opinion in *Hill*).

In addition, several years after the *Hill* decision, the Texas Court of Criminal Appeals held that a curative instruction, combined with other factors, could cure any jury-charge error, implicitly

10

abrogating *Hill*. *See Igo*, 210 S.W.3d at 647–48. In *Igo*, the jury was erroneously instructed that the defendant would not become eligible for parole until the actual time served, plus any good conduct time, equaled one-fourth of the sentence imposed, when—under the proper instruction— Igo would have not have become parole eligible until he had served one-half of his sentence, regardless of good conduct time. *Id*. at 646. Despite receiving a life sentence, the error did not egregiously harm the defendant because the jury was instructed not to consider the extent to which parole law might be applied to the defendant, the evidence on punishment was "exceptionally strong," and parole was not mentioned by either counsel during argument. *Id.* at 647.

After *Igo*, several of our sister courts have either declined to follow *Hill* or have recognized it as abrogated by *Igo*. *Robinson v. State*, No. 01-16-00565-CR, 2018 WL 454751, at *4 (Tex. App.—Houston [1st Dist.] Jan. 18, 2018, no pet.) (mem. op., not designated for publication) (recognizing *Hill* as abrogated); *Sosa v. State*, No. 13-12-00764-CR, 2015 WL 7352310, at *3 (Tex. App.—Corpus Christi Nov. 19, 2015, no pet.) (mem. op., not designated for publication) (declining to follow *Hill*); *Ferguson v. State*, No. 05-14-00281-CR, 2015 WL 1883073, at *3 (Tex. App.—Dallas Apr. 24, 2015, no pet.) (mem. op., not designated for publication) (declining to follow *Hill*). Having reconsidered *Hill* in light of *Igo*, we agree with our sister courts that *Hill* is no longer good law. Accordingly, we disavow the holding in *Hill.*

## III. Conclusion

In light of the facts in this case and according to the standard stated in *Igo*, we find that the trial court's error in submitting an incorrect parole instruction was harmless. Accordingly, we overrule Murrieta's sole point of error.

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:       March 20, 2019
Date Decided:        May 3, 2019

Publish