

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-21-00037-CR

---

DEMONDRE DESHAWN HOLINESS, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 2027953

---

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

A Hopkins County jury found Demondre Deshawn Holiness guilty of unauthorized use of a vehicle and assessed a punishment of two years' confinement in state jail. On appeal, Holiness argues that definitions in the trial court's jury charge constituted an impermissible comment on the weight of the evidence.[1] Because we find that Holiness was not egregiously harmed by the jury charge, we affirm the trial court's judgment.

"We employ a two-step process in our review of alleged jury charge error." *Murrieta v. State*, 578 S.W.3d 552, 554 (Tex. App.—Texarkana 2019, no pet.) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Id.* (quoting *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32)). "The level of harm necessary to require reversal due to jury charge error is dependent on whether the appellant properly objected to the error." *Id.* at 555 (citing *Abdnor*, 871 S.W.2d at 732). Here, because the defendant did not object to the charge, we will not reverse the judgment "unless the record shows the error resulted in egregious harm, *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), such that he did not receive a fair and impartial trial." *Id.* (citing *Almanza*, 686 S.W.2d at 171; *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.)).

---

[1]In companion cases numbered 06-21-00038-CR and 06-21-00039-CR, Holiness appeals from his convictions of evading arrest with a motor vehicle and unlawful possession of a firearm by a felon.

"Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)). "In making this determination, we review 'the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole.'" *Id.* (quoting *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171)). "Direct evidence of harm is not required to establish egregious harm." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

"The purpose of the jury charge is to inform the jury of the applicable law and guide them in its application to the case." *Beltran De La Torre v. State*, 583 S.W.3d 613, 617 (Tex. Crim. App. 2019) (quoting *Hutch*, 922 S.W.2d at 170). "A trial judge must maintain neutrality in providing such information and guidance." *Id.* (citing *Brown v. State*, 122 S.W.3d 794, 798 (Tex. Crim. App. 2003)). "He or she may not express any opinion on the weight of the evidence or draw the jury's attention to particular facts." *Id.* (citing *Brown*, 122 S.W.3d at 798, 801). To refrain from commenting on the weight of the evidence,

> a jury charge: (1) must be in writing; (2) must "distinctly set[] forth the law applicable to the case[";] (3) cannot "express[] any opinion as to the weight of the evidence"; (4) may "not sum[] up the testimony"; and (5) cannot "discuss[] the facts or us[e] any argument in [the] charge calculated to arouse the sympathy or excite the passions of the jury."

*Id.* (all but second alteration in original) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). "This rule is designed to prevent a jury from interpreting a judge's comments as a judicial endorsement or imprimatur for a particular outcome." *Id.* (citing *Bartlett v. State*, 270 S.W.3d

3

147, 150 (Tex. Crim. App. 2008) ("[A] trial court should avoid any allusion in the jury charge to a particular fact in evidence, as the jury might construe this as judicial endorsement or imprimatur.")).

"As a general matter, definitions for terms that are not statutorily defined are not considered to be the 'applicable law' under Article 36.14, and it is thus generally impermissible for the trial court to define those terms in the jury instructions." *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015). "To ensure compliance with Article 36.14, a trial judge should, as a general rule, avoid including non-statutory instructions" and definitions in the jury charge because they "frequently constitute impermissible comments on the weight of the evidence." *Beltran De La Torre*, 583 S.W.3d at 617 (citing *Walters v. State*, 247 S.W.3d 204, 211 (Tex. Crim. App. 2007)); *see Green*, 476 S.W.3d at 445 (citing *Celis v. State*, 416 S.W.3d 419, 433 (Tex. Crim. App. 2013) (plurality op.) ("Non-statutory instructions, even when they are neutral and relate to statutory offenses or defenses, generally have no place in the charge.")); *see also Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012). An "innocent attempt to provide clarity for the jury by including a neutral instruction [or definition] can result in an impermissible comment on the weight of the evidence because" it "'singles out a particular piece of evidence for special attention,' which the jury may then focus on as guidance from the judge." *Beltran De La Torre*, 583 S.W.3d at 617 (quoting *Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000) (quoting *Matamoros v. State*, 901 S.W.2d 470, 477 (Tex. Crim. App. 1995))).

"Section 6.03 of the Texas Penal Code sets out: four culpable mental states— intentionally, knowingly, recklessly, and criminally negligently; two possible conduct

4

elements—nature of the conduct and result of the conduct; and the effect of the circumstances surrounding the conduct." *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015). As a result, the definitions of the mens rea applicable to an offense are statutory definitions. *See Cook v. State*, 884 S.W.2d 485, 488 (Tex. Crim. App. 1994). Yet, because the jury charge must be tailored to the law applicable to the case, "the language in regard to the culpable mental state must [also] be tailored to the conduct elements of the offense." *Price*, 457 S.W.3d 441. In fact, "[a] trial court errs when it fails to limit the language in regard to the applicable culpable mental states to the appropriate conduct element." *Id.* (citing *Cook*, 884 S.W.2d at 491).

A person commits unauthorized use of a vehicle if he "intentionally or knowingly operates another's . . . motor propelled vehicle without the effective consent of the owner." TEX. PENAL CODE ANN. § 31.07. "Since operating another's motor-propelled vehicle is not criminal by its very nature this offense is not a 'nature of conduct' type offense. Nor is it a 'result' type offense since the statute does not prohibit any specific result of such operation." *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). "What makes the conduct unlawful is that it is done under certain circumstances, i.e., without the owner's permission." *Id.* "Therefore, the unauthorized use of a motor vehicle is a 'circumstances type offense, and the culpable mental state . . . must apply to those surrounding circumstances." *Id.* As a result, "Sec. 31.07 encompasses two 'conduct elements[,'] viz[,] that the defendant intentionally or knowingly operated a vehicle (nature of conduct) knowing that such operation was without the effective consent of the owner (circumstances surrounding conduct)." *Id.* at 604.

5

Here, Holiness argues that the trial court deviated from the statutory definitions found in the Texas Penal Code[2] in attempting to tailor the mens rea element to the conduct elements of the offense and commented on the weight of the evidence when it included those definitions in the abstract portion of the jury charge:

*Intentionally Operate Motor-Propelled Vehicle Owned by Another*

A person intentionally operates a motor-propelled vehicle owned by another if the person has the conscious desire to operate a motor-propelled vehicle that the person is aware is owned by another.

*Knowingly Operate Motor-Propelled Vehicle Owned by Another*

A person knowingly operates a motor-propelled vehicle owned by another if the person is aware that the person is operating a motor-propelled vehicle that the person is aware is owned by another.

*Knowing Owner Did Not Effectively Consent to Operation of Vehicle*

A person knows the owner does not effectively consent to the person's operation of the owner's vehicle if he is aware that the owner does not effectively consent to this operation of the vehicle.[3]

Here, even assuming error, we find that Holiness was not egregiously harmed.

First, "[i]t is the application paragraph of the charge, not the abstract portion, that authorizes a conviction." *Crenshaw v. State*, 378 S.W.3d 460, 467 (Tex. Crim. App. 2012). Holiness does not complain of, and we do not find, any error in the application paragraph of the

---

[2]"A person acts intentionally, or with intent, with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct . . . ." TEX. PENAL CODE ANN. § 6.03(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." TEX. PENAL CODE ANN. § 6.03(b).

[3]The State's one sentence response simply argues that the instructions came "from the Texas Pattern Jury Charge published by the Texas State Bar," but the Texas Court of Criminal Appeals has found that certain instructions included in the Texas Pattern Jury Charges can constitute comments on the weight of the evidence. *See Beltran De La Torre*, 583 S.W.3d at 622 n.7.

6

charge. The application paragraph tracks the language of the statute, requiring the jury to find each and every element of the offense beyond a reasonable doubt; does not lessen the State's burden of proof on any element; and does not draw the jury's attention to any specific piece of evidence. As a result, we find that consideration of the entire jury charge weighs against a finding of egregious harm.

Next, the state of the evidence supporting the conclusion that Holiness committed the offense was strong. David Trigiani testified that he owned a silver BMW 328i that was stolen on June 26, 2020, from his driveway and that he immediately reported the vehicle stolen to the local police department. Trigiani said that Holiness did not have permission to take his BMW.

Thomas Colt Patterson, a deputy with the Hopkins County Sheriff's Office (HCSO), testified that he saw a silver BMW 328i on June 29 traveling on the interstate and checked its license plate to confirm that it was Trigiani's stolen BMW. When Patterson and other officers attempted to stop Holiness, Holiness engaged them in a high-speed chase and abandoned the BMW, but was eventually apprehended by Sean Hoffman, an officer with the Sulphur Springs Police Department, "[i]n the vicinity of the vehicle." No other passengers were in the vehicle.

Richard Greer, a patrol sergeant with the HCSO, testified that Holiness was found with a cell phone on his person that had been connected to the stolen vehicle via Bluetooth technology, as demonstrated by a photograph of the BMW's display screen shown to the jury. Corley Weatherford, an HCSO investigator, testified that he obtained permission from Holiness to gain access to Holiness's cell phone and that his inspection of the cell phone also revealed that it had been connected to the BMW.

7

Bobby Buford, who had witnessed Holiness exit the stolen vehicle before abandoning it, called 9-1-1 to report the incident. Video surveillance footage from Buford's neighbor's house, which showed Holiness leaping from the BMW and running away, was played for the jury. Finally, Holiness bragged about the high-speed chase in the stolen vehicle during recorded jailhouse calls. Given the strength of the evidence showing that Holiness had committed the crime, particularly including evidence suggesting his intentional or knowing mens rea, we find that the second factor in determining harm weighs against the finding of egregious harm.

Next, Holiness complains of the following argument given by the State during its closing:

> The defendant intentionally or knowingly operated a motor-propelled vehicle. It's clear he's driving it. He knows how to drive the vehicle. . . . He's intentionally operating it. And the car, the BMW, that's a motor-propelled vehicle, and it is owned by David Trigiani.
>
> David, number two, did not consent to the defendant's operation of the vehicle. We heard from David, he didn't give Mr. Holiness permission, doesn't know Mr. Holiness, his wife didn't give Mr. Holiness permission, and his son didn't give Mr. Holiness permission. And because [neither] David, nor his family knows the defendant, element 3, the defendant knew David Trigiani did not effectively consent to his operation of the vehicle. He knows he doesn't have permission to just hop in that car and leave. He hasn't asked the owners. He doesn't know the owners.
>
> So that is why he's guilty of unauthorized use of a motor vehicle.

Holiness argues that this jury argument significantly reduced the State's burden of proof. We disagree. The jury argument simply addressed both conduct elements discussed in *McQueen*, and we find nothing in the argument that deviated from or minimized the State's burden to prove that Holiness had the required mens rea for unauthorized use of a motor vehicle. Further, we find nothing else in the record that would support a finding of egregious harm.

Because we conclude that Holiness was not egregiously harmed by any jury charge error, we overrule his sole point of error and affirm the trial court's judgment.[4]

Josh R. Morriss, III
Chief Justice

Date Submitted:     September 13, 2021
Date Decided:       October 1, 2021

Do Not Publish

---

[4]Holiness's consolidated brief contains an argument regarding good conduct time based on Article 37.07, Section 4(a), of the Texas Code of Criminal Procedure, which only applied to Holiness's conviction in the evading arrest companion case. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(a) (Supp.). As a result, we do not believe Holiness has raised a complaint about the inclusion of good conduct time in this case. Even if the brief could be interpreted as raising such an argument, we would find it meritless since the trial court properly instructed the jury that "[a] defendant confined in a state jail for a specific term is not subject to release on parole. The term of confinement is not reduced by good conduct time earned during that period of confinement."

9