

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00083-CR
_____

JEREMY DAKOTA MURRIETA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR18-036

Before Stevens, C.J., van Cleef and Rambin, JJ.
Opinion by Justice van Cleef

# OPINION

The trial court denied Jeremy Dakota Murrieta's request for post-conviction DNA testing.[1]  Murrieta appeals, claiming the trial court abused its discretion in denying the motion. After reviewing the record and applicable law, we affirm the trial court's ruling.

## I.    Background

Murrieta was convicted of aggravated sexual assault of a child in 2018.  This Court affirmed the conviction in 2019.  *See Murrieta v. State*, 578 S.W.3d 552 (Tex. App.—Texarkana 2019, no pet.).  There, we addressed the sufficiency of the evidence and found:

> [I]t was undisputed that the bedroom door was blocked shut with a container of clothing and that [the child's mother] found Murrieta naked in bed with six-year-old Nina,[2] who was also naked.  [Mother] testified that Nina told her that Murrieta had taken her clothes off.  While pointing to her vaginal area, [Nina] told the Sexual Assault Nurse Examiner (SANE) that Murrieta had touched her with his "part."  During her forensic interview the following day at the Children's Advocacy Center, Nina denied making the outcry to the SANE nurse, but at trial she testified that Murrieta had hurt her on her private parts.  Murrieta claimed that, while the child was sleeping in the bed with him, he used a lubricant to masturbate and then fell asleep.  However, the jury could have rejected this testimony because Nina's older sister . . . testified that Nina was covered, from navel to knees, in a lubricant and because Murrieta had no explanation for why Nina was naked.

*Id.* at 556.  The mother also testified that, when she discovered Murrieta in bed with Nina, Murrieta was wearing a latex examination glove.  Mother had only seen him wear such a glove once before, when she saw him masturbating.

---

[1]*See* TEX. CODE CRIM. PROC. ANN. art. 64.01(a-1).

[2]We use a pseudonym to protect the identity of the victim, who was a child at the time of the described offense, and a generic term for the child's mother.  Here, we use the same pseudonym we used in our opinion on direct appeal. *See* TEX. R. APP. P. 9.10(a)(3).

Additionally, Mother and Nina's sister testified that, after being discovered,

> Murrieta tried to take [Mother's] truck keys and cell phone to prevent [Mother] from leaving with the children. Murrieta texted [her] that, if she would "keep everybody out of it," he would be out of their lives, and prior to trial, Murrieta offered, in writing, to relinquish his parental rights to his . . . other children in exchange for the case being dismissed. The jury could have reasonably viewed those actions as evidence that Murrieta knew he was guilty and that he was trying to avoid the consequences of his actions.

*Id.*

The sexual assault nursing examiner (SANE), Megan Richardson, described her examination of Nina and testified that the child's hymen was "non-estrogenized," which meant that contact with her hymen would have been painful to the child. Richardson testified that Nina told her "it hurted" when Murrieta touched her vaginal area. Because of the state of Nina's hymen, Richardson found Nina's statement consistent with the alleged contact. More importantly, Richardson testified that Nina's female sexual organ would have to have been penetrated for something to have contacted the hymen. The mother testified that Nina told her, "[Murrieta] took my clothes off, Mama."

Murrieta did not deny being in bed with the naked six-year-old. His defense was that he was masturbating in bed and did not sexually assault her.[3] In his interview, he told law enforcement that he could not wake Nina to get her to go to her room, placed pillows or bedding between them, masturbated, and then fell asleep. His motion for DNA testing claimed that, if his DNA was not found on any of the samples obtained during the SANE examination, he would be exonerated.

---

[3]In his recorded interview with law enforcement, Murrieta admitted bumping his leg or knee into the sleeping girl's body.

The trial court denied Murrieta's motion on three grounds: (1) Murrieta "failed to include [with his motion for testing] an affidavit, sworn to by himself, containing statements of fact in support of the motion,"[4] (2) "[i]dentity was not an issue at trial,"[5] and (3) if testing were done on the materials gathered in the sexual-assault examination, that testing "would not generate a greater than 50% chance that Defendant would not have been convicted if DNA testing provided exculpatory results since identity was not at issue at trial."[6]

## II. Standard of Review

In reviewing the trial court's denial of Murrieta's Chapter 64 motion, "we give almost total deference to the judge's resolution of historical fact issues supported by the record and application[]-of-law-to-fact issues turning on witness credibility and demeanor." *Reed v. State*, 541 S.W.3d 759, 768 (Tex. Crim. App. 2017). Yet, "we review *de novo* all other application-of-law-to-fact questions." *Id.* at 768–69.

"To be entitled to post-conviction DNA testing, a convicted person must satisfy the requirements of Chapter 64 of the Code of Criminal Procedure." *Hall v. State*, 569 S.W.3d 646, 655 (Tex. Crim. App. 2019). A convicting court may only order forensic DNA testing if "identity was or is an issue in the case." TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(C). If identity was or is an issue, then the convicted person must establish "by a preponderance of the evidence that . . . the person would not have been convicted if exculpatory results had been obtained through DNA testing." *Hall*, 569 S.W.3d at 655 (quoting TEX. CODE CRIM. PROC. ANN.

---

[4]*See* TEX. CODE CRIM. PROC. ANN. art. 64.01(a-1).

[5]*See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(C).

[6]*See* TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(2)(A).

4

art. 64.03(a)(2)(A)). "This means that a convicted person must show a greater than 50% chance that he would not have been convicted if exculpatory results from the requested DNA testing had been available at trial." *Id.*; *see Ex parte Gutierrez*, 337 S.W.3d 883, 899 (Tex. Crim. App. 2011). "In considering the likelihood of conviction, we limit our review to whether exculpatory results would alter the landscape of evidence at trial, and we do not consider post-trial factual developments." *Hall*, 569 S.W.3d at 656. "Whether the DNA of a third party would establish a greater than 50% chance that the defendant would not have been convicted depends on the circumstances of the case." *Id.* The presence of a third party's DNA will overcome substantial inculpatory evidence "when it is clear that the biological material in question was left by a lone assailant." *Id.* at 657; *see, e.g.*, *Esparza v. State*, 282 S.W.3d 913, 922 (Tex. Crim. App. 2009).

When making this assessment, we assume that the results of the DNA testing would be favorable to the movant. *Routier v. State*, 273 S.W.3d 241, 257 (Tex. Crim. App. 2008). "The burden under Article 64.03(a)(2)(A) is met if the record shows that exculpatory DNA test results, excluding the defendant as the donor of the material, would establish, by a preponderance of the evidence, that the defendant would not have been convicted." *Ex parte Gutierrez*, 337 S.W.3d at 899.

### III. Murrieta's Amended Motion for Testing

Murrieta filed his motion for DNA testing on February 1, 2024. He did not attach an affidavit as required by Article 64.01(a-1).[7] However, on March 21, 2024, he filed an amended motion for DNA testing that did include the required affidavit. His amended motion is the

---

[7]A motion for post-conviction DNA testing "must be accompanied by an affidavit, sworn to by the convicted person, containing statements of fact in support of the motion." TEX. CODE CRIM. PROC. ANN. art. 64.01(a-1).

5

subject of this appeal. The trial court signed its order denying testing, citing the three reasons noted above, on March 22, 2024.[8] The record does not support the trial court's finding that Murrieta failed to attach the required affidavit to his motion. *See Skinner v. State*, 122 S.W.3d 808, 813 (Tex. Crim. App. 2003), *superseded by statute as stated in Wood v. State*, No. AP-77,107, 2024 WL 2306277, at *3–4 (Tex. Crim. App. May 22, 2024). However, the record does support the trial court's other two reasons for denying Murrieta's request for testing.

## IV. Identity Was and Is Not an Issue

Murrieta's trial defense was that he masturbated while naked in bed next to Nina but that he did not sexually assault her. The record illustrates that Murrieta attempted to show that the evidence that he sexually assaulted Nina was weak and contradictory, or simply false. Murrieta faulted the State for failing to perform DNA analysis on several items, including the vaginal swabs, the glove, and clothing items. Nowhere in the record do we find a suggestion that Nina was assaulted by someone else while in bed with Murrieta. His filings before this Court neither add nor detract from the trial defense. Notably absent from the trial record, or anything before this Court, is any assertion that someone else sexually assaulted Nina. In his amended motion, Murrieta asserted,

> Here, Applicant has maintained his innocence and insists that he did not assault [Nina]. A SANE exam was completed within hours after the alleged assault occurred. Thus, if Applicant assaulted [Nina], his DNA will be present on the evidence from that exam. However, if his DNA is not present, the exculpatory evidence will prove Applicant's innocence.

---

[8]The trial court's order denying testing was signed March 22, 2024. However, the district clerk's file stamp shows that the order was filed March 20, 2024, at 2:38 p.m. That is the same date and time that the State's proposed findings of fact and conclusions of law and the State's objections to Murrieta's motion for DNA testing were filed.

Murrieta provided the trial court nothing beyond bare assertion to support a conclusion that he could not have sexually assaulted Nina without leaving DNA. Even so, his argument before this Court is as follows:

> There is no doubt that [Nina] knew Appellant and could identify him if an assault occurred, but Appellant has maintained his innocence and insists that he did not assault [Nina]. If the evidence is tested and Appellant's DNA is not located on the vaginal swabs, on her panties, or on other items collected during the SANE exam[ination], it would lead to one logical conclusion—that Applicant thereby established by a preponderance that had the DNA been tested and excluded him, he would not have been convicted. Thus, Appellant has made identity an issue by showing that exculpatory DNA tests would prove his innocence.

There is a subtle yet important distinction between the argument Murrieta raised in his amended motion and the argument he makes on appeal. In his motion, Murrieta premised "if Applicant assaulted [Nina]"; that, at least, leaves open the possibility that Nina was assaulted. On appeal, the premise is "if an assault occurred." "[I]f an assault occurred" and "[i]f the evidence is tested and Appellant's DNA is not located" suggest that Appellant's argument is that DNA analysis may prove that no offense took place—the same argument implied at trial. Neither version of the argument suggests that the offense of conviction was perpetrated by some other person. To the contrary, assuming that Nina was assaulted, Murrieta agrees that she could identify him, just as she did at trial.[9]

---

[9] Unlike *Blacklock v. State*, 235 S.W.3d 231, 233 (Tex. Crim. App. 2007), and *Esparza*, 282 S.W.3d at 922, there was no semen nor body fluid mentioned at trial. It is well-known and accepted that such body fluids generally contain DNA, and it is logical to assume that untested body fluids in a sexual-assault case could exonerate a wrongly convicted person. That is not the case here, and we are left to guess how, in the absence of those fluids, DNA testing would benefit the appellant. In *Esparza*, the sexual-assault victim additionally had potential DNA under her fingernails, which is also not an issue in this case. *Esparza*, 282 S.W.3d at 916. While we acknowledge that an eyewitness identification, a guilty plea, and/or a confession do not eliminate identity as a consideration, the type of evidence to be tested and other facts of the case are still important factors to consider. *See* TEX. CODE CRIM. PROC. ANN. art. 64.03(b). In *Blacklock*, for example, the appellant alleged that, "[h]ad the biological evidence been subjected to proper DNA testing capable of determining the identity of the donor of the semen, as defendant believes

Article 64.03 states,

**Requirements; Testing**

(a)    A convicting court may order forensic DNA testing under this chapter only if:

(1)    the court finds that:

(A)    the evidence:

(i)    still exists and is in a condition making DNA testing possible; and

(ii)    has been subjected to a chain of custody sufficient to establish that it has not been substituted, tampered with, replaced, or altered in any material respect;

(B)    there is a reasonable likelihood that the evidence contains biological material suitable for DNA testing; and

(C)    identity was or is an issue in the case; and

(2)    the convicted person establishes by a preponderance of the evidence that:

(A)    the person would not have been convicted if exculpatory results had been obtained through DNA testing; and

(B)    the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice.

TEX. CODE CRIM. PROC. ANN. art. 64.03(a)(1)(A), (a)(2)(B).

Murrieta's argument conflates two, distinct, concepts:  identity and likelihood of success. *Blacklock* and *Esparza* seem to support this formulation, but a close reading of those cases illustrates that they rest on an entirely different foundation than Murrieta's case.  *See supra* n.10. Ultimately, "Chapter 64 requires that identity 'was or is' an issue, not that future DNA testing

---

is possible today, and such results excluded the defendant as the donor, it is reasonably probable that the defendant would not have been prosecuted or convicted." *Blacklock*, 235 S.W.3d at 232 n.2.  Neither Blacklock nor Esparza challenged whether the sexual assaults actually occurred.

8

could raise the issue." *Bell v. State*, 90 S.W.3d 301, 308 (Tex. Crim. App. 2002). Simply claiming that he did not sexually assault Nina, without more, does not raise an identity issue. Alleging that untested body fluids or fingernail scrapings that are well known to contain DNA would be a different matter. Whether testing the swabs identified other contributors or failed to identify the appellant as a contributor, we fail to see how this would exculpate the appellant. This is a contact offense. The Texas Court of Criminal Appeals has observed that "epithelial cells are ubiquitous on handled materials" such as sheets, a blanket, and clothing in Appellant and Nina's common household, that "there is an uncertain connection between the DNA profile identified from the epithelial cells and the person who deposited them," and that "touch DNA analysis cannot determine when an epithelial cell was deposited." *Hall*, 569 S.W.3d at 658 (quoting *Reed*, 541 S.W.3d at 777). Further, the perpetrator's DNA could have been washed off before the samples were collected the next day, or he could have worn a condom.[10] Neither the absence of his DNA, nor the presence of another's DNA, would be likely to exonerate Murrieta. But, importantly, there is no evidence of another person at the scene, and Murrieta does not suggest such a presence.

An appellant's own self-serving declaration of innocence is not, by itself, sufficient to place identity in issue. *See Prible v. State*, 245 S.W.3d 466, 467 (Tex. Crim. App. 2008). Any other formulation of Chapter 64's requirements would result in Chapter 64 DNA analysis in every criminal case with a physical component.

---

[10]Nina was seen by the SANE the day after the incident.

Even if Murrieta hurdled the identity requirement of Article 64.03, the independent evidence of his guilt, detailed above and in the prior appeal of his conviction, is substantial and prevents us from finding that he sustained his burden under Article 64.03(a)(2). *See Swearingen v. State*, 303 S.W.3d 728, 736 (Tex. Crim. App. 2010) ("Texas courts have consistently held that a movant does not satisfy his burden under Article 64.03 if the record contains other substantial evidence of guilt independent of that for which the movant seeks DNA testing."); *Bell*, 90 S.W.3d at 306 (concluding that appellant's "bare assertion that the biological samples in question might belong to someone else" was "not enough" to constitute affirmative evidence of appellant's innocence); *Morris v. State*, 110 S.W.3d 100, 103 (Tex. App.—Eastland 2003, pet. ref'd) (concluding identity was not an issue when appellant admitted he was with the victim at the time of alleged assault).

Finally, to the extent that Murrieta believes DNA evidence will establish that no offense occurred, Chapter 64 presupposes that an offense took place. Chapter 64 is not a means to prove that an offense did not occur.

A court may not grant a post-conviction motion for DNA testing unless the movant has satisfied all of the Chapter 64 requirements. *See Wilson v. State*, 185 S.W.3d 481, 484 (Tex. Crim. App. 2006). Therefore, we need not address any other basis for the trial court's order. *See* TEX. R. APP. P. 47.1.

## V.      Conclusion

We affirm the trial court's order.

Charles van Cleef
Justice

Date Submitted:      July 22, 2024
Date Decided:        September 3, 2024

Publish

11