

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00046-CR
_____

JUSTIN EUGENE HOWARD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 54807-B

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

A Gregg County jury convicted Justin Eugene Howard of the following: (Count I) aggravated sexual assault of a child under fourteen years old, for which it assessed a sentence of eighty years' imprisonment; (Count II) sexual assault of a child under seventeen years old, for which it assessed a twenty year sentence; and (Count III) indecency with a child under seventeen years old by sexual contact, for which it assessed a ten-year sentence. *See* TEX. PENAL CODE ANN. §§ 21.11(a)(1), 22.011(a)(2), 22.021(a)(2)(B).[1]

On appeal, Howard acknowledges that the jury charge contained a general unanimity instruction. Even so, Howard argues that the jury charge "was erroneous because it allowed the jury to convict [him] of each count without being unanimous about the specific crime [he] was alleged to have committed." We find no jury charge error as to Count I, and affirm the trial court's judgment as to Count I. However, because we find that Howard was egregiously harmed by jury charge error affecting the remaining counts, we reverse the trial court's judgments of conviction for Counts II and III and remand those matters for a new trial.

I.      **Factual and Procedural Background**

The State's three-count indictment alleged the following:

[Count I] that on or about the 1st day of August, 2009[,] . . . JUSTIN EUGENE HOWARD[] . . . did then and there intentionally and knowingly cause the penetration of the mouth of [Carol,][2] a child who was then and there younger than [fourteen] years of age, by the defendant's sexual organ[.]

---

[1]The trial court imposed the jury's assessed sentences and ordered them to run consecutively.

[2]We use a pseudonym to protect the identity of the victim who was a minor at the time of the offense. *See* TEX. R. APP. P. 9.10.

2

. . .

. . . [Count II] that on or about the 23rd day of July, 2017[,] . . . JUSTIN EUGENE HOWARD[] . . . did then and there intentionally and knowingly cause the penetration of the mouth of [Carol], a child who was then and there younger than [seventeen] years of age, by the defendant's sexual organ.

. . .

. . . [Count III] that on or about the 23rd day of July, 2017[,] . . . JUSTIN EUGENE HOWARD[] . . . did then and there, with the intent to arouse or gratify the sexual desire of the defendant, engage in sexual contact with [Carol] hereafter styled the complainant, by touching the genitals of the complainant, a child younger than [seventeen] years of age.

Carol was twenty-two years old by the time of trial and said that Howard's sexual abuse began when she was a young child. Carol testified that she was still attached to her pacifier when she was six in 2008 and that Howard "would put the pacifier under his blanket and pull out his penis and tell [her] to suck it" as if it were her pacifier. Carol testified that she sucked Howard's penis and that there was only "one occasion of that situation."

According to Carol, Howard "always rub[bed] his penis against [her] vagina" under her clothing from the time she was six until she was eighteen. Carol clarified that those incidents occurred "at least twice a month." She described one incident that occurred in the Walmart parking lot in Longview when she was fourteen. Carol said that Howard woke her up, drove her to the parking lot, and rubbed his penis on her vagina until he ejaculated. Carol said that after she started birth control in September 2016 at age fourteen, Howard would "occasionally" insert the tip of his penis into her vagina.

Carol testified that, on one occasion when she was fifteen, Howard set her down on the bathroom counter, took off her clothing and his pants, and, while she was naked, "rubbed his

3

penis against [her] vagina to make sure that [she] was not a lesbian." Carol said that incident took place in Lakeport, which is in Gregg County.

When Carol was seventeen, her friend gave her a condom when she began dating. Howard found the condom and became upset that Carol was dating. According to Carol, Howard was drunk and naked when he decided to test her virginity by "threaten[ing] to stick his penis inside of [her] vagina," saying to Carol, "If I stick it in and you bleed, then [you are] a virgin."[3]

Debra Stiles, a detective with the Longview Police Department Crimes Against Children Unit, spoke with Carol when she made the delayed outcry of sexual abuse. Stiles testified that Carol told her about the pacifier incident that occurred when Carol was six. According to Stiles, Carol said that "Howard put the pacifier under the covers . . . next to his genitals and told [Carol] she could have it if she went under the covers, and then he would force her to suck his penis." Carol also told Stiles that, when she was thirteen, Howard "rubbed his penis against her vagina until he had an orgasm" in Marshall, Texas. As to other incidents of "oral sex," Stiles testified that Carol said it "continue[d] through age 14 and up," but failed to specify what she meant by the term.

---

[3]Immediately after making this statement, Carol testified:

> And there [sic] was like that for about 5 to 10 minutes, just going back and forth.
> Q. (BY THE STATE)     And then what happened?
> A.     It is a blur just due to the trauma. I can't a hundred percent remember, but I know I did lock myself in the room for the rest of the night after that.
> Q.     And he never did eventually fully stick it in at that time?
> A.     What was that? I'm sorry.
> Q.     He never was able to get it in at that time?
> A.     No, ma'am.

4

According to Stiles, Carol said that, when she was fifteen in 2017, Howard took a drug for erectile dysfunction and "had an erection [when] . . . he abused her and that it lasted forever because of whatever he was taking." Stiles testified that Howard's medical records show that he was prescribed Cialis on June 22, 2017.

The trial court's jury charge generally instructed the jury that it could "return a verdict only if all twelve of you agree on this verdict." After setting forth the elements of each offense, the application portion of the jury charge further instructed the jury only to find the defendant guilty "[i]f you all agree the [S]tate has proved, beyond a reasonable doubt, each of the . . . elements listed above."

## II. Standard of Review

"Our first duty in analyzing a jury-charge issue is to decide whether error exists." *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If no error is present, our analysis is concluded. *Id.*; *see also Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). "[I]f we find error, we analyze that error for harm." *Ngo*, 175 S.W.3d at 743.

When, as here, the defendant "did not object to the charge, we will not reverse [the judgment] unless the record shows the error resulted in egregious harm." *Murrieta v. State*, 578 S.W.3d 552, 555 (Tex. App.—Texarkana 2019, no pet.) (citing *Ngo*, 175 S.W.3d at 743–44). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007)). "In making this determination, we review 'the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant

5

information in the record as a whole.'" *Id.* (quoting *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed)). "Direct evidence of harm is not required to establish egregious harm." *Id.* (citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)). That said, "the record must show that a defendant has suffered actual, rather than merely theoretical, harm from jury instruction error." *Ngo*, 175 S.W.3d at 750 (citing *Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999)).

### III. Analysis

In his sole point of error on appeal, Howard argues that the trial court's jury charge was erroneous because it did not require unanimity regarding the incident that constituted the commission of the offense.

A jury's verdict in a felony case must be unanimous. *See* TEX. CONST. art V. § 13; TEX. CODE CRIM. PROC. ANN. art. 36.29(a) (Supp.); *Stuhler*, 218 S.W.3d at 716. This means that "a jury [must] reach a unanimous verdict about the specific crime that the defendant committed." *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). In other words, "the jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'" *Id.* (quoting *Stuhler*, 218 S.W.3d at 717).

> [N]on-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions. Each of the multiple incidents individually establishes a different offense or unit of prosecution. The judge's charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented.

*Id.* at 772 (footnotes omitted) (citations omitted); *see Ngo*, 175 S.W.3d at 744 n.21 (quoting *Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000) ("The unanimity requirement is

6

undercut when a jury risks convicting the defendant of different acts, instead of agreeing on the same act for a conviction.")).

**A.    There Was No Jury Charge Error as to Count I**

Howard's argument about the jury charge only applies if the evidence shows that Howard committed the charged offense on multiple but separate occasions.  Count I of the State's indictment alleged that Howard's sexual organ penetrated Carol's mouth when she was younger than fourteen.  Carol's testimony shows that she described only one such specific act occurring when she was younger than fourteen—the pacifier incident that happened when she was six.  Carol testified that Howard forced her to place his penis in her mouth during the pacifier incident and that there was only "one occasion of that situation."  As a result, the offense charged in Count I only happened once while Carol was younger than fourteen.  Therefore, the jury had to be unanimous that the specific pacifier incident occurred to convict Howard of Count I.  Because the jury charge required jury unanimity as to Count I, there was no jury charge error as to that count.

**B.    The Charge Did Not Require Unanimity as to Counts II and III**

Count II alleged that Howard penetrated Carol's mouth with his sexual organ in July 2017, when Carol was fifteen.  Carol did not testify about any incidents of oral sex except for the pacifier incident.  As a result, the only evidence supporting Count II was Stiles's testimony that there were multiple incidents of "oral sex" that "continue[d] through age [fourteen] and up."  This presented a classic example of the unanimity issue discussed in *Cosio*.

There, the Texas Court of Criminal Appeals explained that "when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions[,] . . . [e]ach of the multiple incidents individually establishes a different offense or unit of prosecution," creating an issue of "non-unanimity." *Cosio*, 353 S.W.3d at 772 (footnotes omitted) (citations omitted). Thus, "[t]he judge's charge, to ensure unanimity, would need to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented." *Id.* Here, because the trial court's charge omitted the instruction required by *Cosio*, we sustain Howard's complaint of jury charge error as to Count II.

As for Count III, the State alleged that Howard touched Carol's genitals with the intent to arouse or gratify his sexual desire on or about July 23, 2017, when Carol was fifteen. Carol testified about one specific incident of that conduct that occurred when she was fifteen. On that occasion, which took place in Lakeport, Howard set Carol down on the bathroom counter, took off her clothing and his pants, and, while she was naked, "rubbed his penis against [her] vagina to make sure that [she] was not a lesbian." However, Carol also testified that Howard "always rub[bed] his penis against [her] vagina" under her clothing from the time she was six until she was eighteen. That constituted evidence that Howard committed the charged offense on multiple but separate occasions, and, as a result, an instruction to the jury "that its verdict must be unanimous as to a single offense or unit of prosecution among those presented." *Id.* Because the required instruction was omitted, we sustain Howard's complaint of jury charge error as to Count III.

## C.    Egregious Harm is Shown as to Counts II and III

Next, we address the issue of harm as to Counts II and III.  Because Howard did not object to the trial court's charge, "we will review 'the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole'" to determine whether Howard was egregiously harmed.  *Murrieta*, 578 S.W.3d at 555 (quoting *Villarreal*, 205 S.W.3d at 106).

We have already noted that the jury charge permitted non-unanimous verdicts on Counts II and III based on the evidence presented in the case.  Nothing in the charge mitigated the error.  *See Cosio*, 353 S.W.3d at 777.  Accordingly, the charge "marshals strongly toward a finding of [egregious] harm."  *Williams v. State*, 474 S.W.3d 850, 858 (Tex. App.—Texarkana 2015, no pet.).

As for the arguments of counsel, they exacerbated the error.  When describing the meaning of a unanimity requirement, the State argued the following:

> [The verdict] has to be a unanimous verdict. . . . We know that everyone has to agree.
>
> Let's take Count III, for example, just to show you that you can believe different instances and still be unanimous.  Okay.  So let's take indecency with a child by (indiscernible).  The elements are with intent to arouse or gratify the sexual desire; intentionally or knowingly engage in sexual contact with [Carol] . . . by touching the genitals of [Carol], a child younger than [seventeen] years of age.
>
> I will give you two instances.  Okay.  So she talked about being set up on the counter when she was [fifteen] in the bathroom. . . . So that's one incident.
>
> If [ten] of y'all say, You know what?  I think that happened -- okay -- but two of y'all say, Well, I don't know.  I don't know if that happened, so to

> speak -- then let's take the next one where . . . he takes her into her bedroom, throws her on the bed, takes her pants off, puts his penis next to her, and, you know, basically breaks the plane . . . .
>
> Okay. Let's say the other two that didn't believe the counter, bathroom counter, but two of you said, You know what? I think that happened. . . . You believe that happened, and the other [ten] believe that the bathroom happened, that's still unanimous.

The prosecutor continued, "If ten of you believe one instance and two of you believe the other, it's still unanimous. That's what I wanted to get at: at that, so that you understand that y'all don't have to agree on a specific instance as long as it meets the elements." Just as in *Ngo*, the prosecutor's argument regarding unanimity was "not the law" but rather, compounded "the error in this case." *See Ngo*, 175 S.W.3d at 750.

Howard's closing argument did not discuss unanimity. Further, the prosecutor stated in its final closing that there were multiple incidents described by the evidence that met the conduct alleged by Counts II and III and that the elements of those offenses were proven if the jury believed the testimony. Because the arguments of counsel "added to the charge errors by telling the jury that it did not have to be unanimous about the specific instance of criminal conduct in rendering its verdicts," those arguments "weigh in favor of finding egregious harm." *Cosio*, 353 S.W.3d at 777 (citing *Ngo*, 175 S.W.3d at 750–52); *see Williams*, 474 S.W.3d at 859.

As for other portions of the record, during voir dire, Howard made the following comment regarding unanimity,

> Again, the -- what you're asked to give is a unanimous verdict. Unanimous implies that there are [twelve] verdicts that all have to be the same. And so that's -- that's what it is. We've got [twelve] verdicts that all have to be the same for a guilty verdict to happen. And so you can have different reasons to find something beyond a reasonable doubt.

10

However, that argument did nothing to explain to the jury that they had to be unanimous as to a specific instance of criminal conduct and instead suggested that the jury could reach a unanimous verdict if they believed Howard committed the offense at any point.

Even so, pointing to the last factor, the State argues that the state of the evidence negates any finding of egregious harm. In support, the State cites *Cosio*, which is easily distinguishable. *See Cosio*, 353 S.W.3d at 777. In *Cosio*, the defendant denied committing any offense, and the victim, whose testimony was unimpeached, testified about all the separate incidents of criminal conduct with similar specificity. As a result, the Texas Court of Criminal Appeals reasoned that the jury rejected the defensive theory and concluded that "it [wa]s logical to suppose that the jury unanimously agreed that Cosio committed all of the separate instances of criminal conduct during each of the [separate] incidents." *Id.* at 778. Accordingly, the Texas Court of Criminal Appeals found that the state of evidence showed a lack of actual harm, but only because "neither of the parties nor the trial judge added to the charge errors by telling the jury that it did not have to be unanimous about the specific instance of criminal conduct in rendering its verdicts." *Id.* at 777.

Here, Carol only testified about one incident of penetration of her mouth by Howard's penis—the pacifier incident that happened when she was six and formed the basis of the conviction under Count I. Carol specified that there was only "one occasion of that situation." To prove Count II, the State had to prove another separate incident showing that Howard penetrated Carol's mouth with his penis when Carol was younger than seventeen. The only such testimony to support Count II was Stiles's testimony that there were other incidents of "oral sex,"

11

that it "continue[d] through age [fourteen] and up," but again, that was contradicted by Carol's testimony that the pacifier incident was the "one occasion" where Howard penetrated her mouth with his penis. As a result, the state of the evidence, as to Count II, was not as conclusive as it was in *Cosio* and, on those facts, weighs in favor of finding egregious harm.

As to Count III, Carol testified that there were multiple incidents where Howard touched her genitals with the intent to arouse or gratify his sexual desire. For the purposes of our analysis, we find that the state of the evidence, as to Count III, weighs against finding egregious harm. However, the prosecutor specifically used Count III as an example when improperly instructing the jury during closing that it could convict if ten of them believed that the bathroom counter incident in Lakeport occurred while the other two did not, as long as the other two jurors believed that the incident where Howard was "testing" Carol's virginity occurred.

After weighing the relevant factors, we find that Howard was egregiously harmed by the lack of a proper unanimity instruction related to Counts II and III because this is a case where "the parties . . . added to the charge errors by telling the jury that it did not have to be unanimous about the specific instance of criminal conduct in rendering its verdicts." *Id.* As a result, this case is unlike *Cosio* and is instead like *Ngo*, where the jury was instructed that it could issue a "mix and match" non-unanimous verdict. *Ngo*, 175 S.W.3d at 751. We have previously decided that where this occurs, "it is impossible to know which criminal act . . . was the source of the jury's verdict." *Williams*, 474 S.W.3d at 859. As a result, in such a situation, a defendant's "right to a unanimous jury verdict [i]s violated and this violation cause[s] egregious harm to [a defendant's] right to a fair and impartial trial." *Ngo*, 175 S.W.3d at 752; *see Williams*, 474

12

S.W.3d at 859–60.  For these reasons, we reverse the trial court's judgments as to Counts II and III.  *See Ngo*, 175 S.W.3d at 752; *Williams*, 474 S.W.3d at 860; *see also Alberts v. State*, No. 06-09-00058-CR, 2009 WL 4724302, at *6 (Tex. App.—Texarkana Dec. 11, 2009, no pet.) (mem. op., not designated for publication).

## IV.      Conclusion

We affirm the trial court's judgment as to Count I.  We reverse the judgments as to Counts II and III, and remand those matters to the trial court for a new trial.


Scott E. Stevens
Chief Justice


Date Submitted:        November 5, 2025
Date Decided:          March 18, 2026

Do Not Publish